## STATE OF MARYLAND *v.* WILLIAM JAMES BECKER

[No. 451, September Term, 1974.]

*Decided February 18, 1975.*

The cause was argued before MENCHINE, MOORE, LOWE and MELVIN, JJ.

*George A. Eichhorn, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William E. Brannan, State's Attorney for Baltimore County,* and *John Austin, Assistant State's Attorney for Baltimore County,* on the brief, for appellant.

No appearance or brief for appellee.

LOWE, J., delivered the opinion of the Court.

No constitutional right gives greater concern to this Court than the fundamental Sixth Amendment guarantee that an accused shall enjoy the right to a speedy trial. There is a delicate balance to be maintained in assuring expeditious prosecution which is not an exclusive benefit of an accused.

". . . there is a societal interest in providing a

speedy trial which exists separate from, and at times in opposition to, the interests of the accused. The inability of courts to provide a prompt trial has contributed to a large backlog of cases in urban courts which, among other things, enables defendants to negotiate more effectively for pleas of guilty to lesser offenses and otherwise manipulate the system." *Barker v. Wingo*, 407 U. S. 514, 519.

In part to obviate defense manipulation by hyper-technical application of this right and yet assure its protective application, the Supreme Court "attempted to set out the criteria by which the speedy trial right is to be judged." *Barker*, 407 U. S. at 516. The keystone among those criteria was the question of whether the accused was prejudiced. The Court recognized that "unlike the right to counsel or the right to be free from compelled self-incrimination, deprivation of the right to speedy trial does not per se prejudice the accused's ability to defend himself." [1]

The case at bar provides a novel twist to that much-litigated issue. A dismissal was granted by the trial judge below and the State appealed.

Appellee was indicted by the Grand Jury of Baltimore County for automobile larceny. Since time is at the root of the issue before us we will recite the record revelations chronologically.

*August 27, 1973* — Indictment filed. Capias issued.

*September 7, 1973* — Motion for discovery and inspection by defendant in proper person.

*September 20, 1973* — Petition for Habeas Corpus ad testificandum filed by defendant in proper person due to his federal incarceration, to obtain transportation, etc. and reciting intent to retain counsel for pre-trial motions.

*September 24, 1973* — The court alerted Public Defender by letter.

---

1. While distinguishing the speedy trial right from other constitutional rights, Mr. Justice Powell recognized "that deprivation of the right may work to the accused's advantage. Delay is not an uncommon defense tactic." Barker v. Wingo, 407 U. S. at 521.

*September 7, 1973* — Writ of Habeas Corpus issued.[2]

*September 27, 1973* — State answered discovery motion.

*October 5, 1973* — Defendant moved to dismiss indictment for lack of evidence.

*October 11, 1973* — Defendant moved to inspect Grand Jury minutes.

*October 12, 1973* — Petition for order for out-of-state witnesses for defendant filed by Public Defender.

*October 16, 1973* — Defendant filed Motion for Bill of Particulars.

*October 19, 1973* — State excepted thereto.

*October 24, 1973* — Defendant filed Motion to Suppress Identification.

*October 29, 30, 1973* — Defendant's letters to court asserting defenses and complaining of counsel and court conduct. Defendant dismissed Public Defender assigned to him.

*November 6, 1973* — Correspondence expressing intent to retain private counsel.

*November 12, 1973* — Court correspondence in reply — also notice of bail set.

*January 31, 1974* — Motion for transcript of hearing filed.

*February 7, 1974* — Motion to waive counsel filed.

*February 13, 1974* — Pre-trial motions set for hearing on March 15, 1974.

*February 26, 1974* — State's answers to motions to dismiss, discover, and inspect filed.

*March 15, 1974* — Docket entries reflect action on all motions filed. The entry regarding waiver of counsel reads as follows:

> "Hearing had on Defendant Becker's motion filed February 7, 1974; motion granted, then, at Becker's request, motion DENIED on ground Defendant

---

2. The issuance of the writ filed subsequent to the petition was dated as issued and filed 13 days before the petition.

Becker now says he does not want to waive his constitutional right to counsel . . . ."

*April 16, 1974* — Hearing on April 16, 1974 pursuant to defendant's motion for out-of-state witnesses and evidence. The court instructed the *State's Attorney* to do whatever was necessary to provide defendant with his request:

"Yes. I am going to put the burden on you [the Assistant State's Attorney] to do the secretarial work on this. You can do the same thing, Mr. Becker, you can issue a subpoena to them. But I think you can get it if you simply write to them and explain the situation, Mr. Austin, [Assistant State's Attorney] and tell them if they don't provide it — tell them you are willing to pay for a copy — but if they don't provide it, then they will be put to the trouble — we will issue an out-of-state subpoena, and require them to produce somebody here. I think when you tell them that, that you will get it."

The court then considered defendant's evidentiary needs for trial, item by item, recommending to the State's Attorney the procedure to follow in *assisting* the accused. The case was assigned for trial on the 29th of April, which the State expressed as one reason it had "been pushing hard" and was so willing to assist Defendant at the court's suggestion. The court deferred discussion on the out-of-state witnesses motion and marked it "hearing had on Becker's request to subpoena out-of-state witnesses, continued to 4/24/74 at 3: P.M." This was done because the State's Attorney "knows what follow-up he has to do and you [Becker] know what follow-up you have to do . . . . By that time you ought to know whether you can get these things or not." Defendant then did another about face on his request for counsel. In response to the court's question after admonishing him "You've got to make up your mind. Do you want counsel or don't you? The defendant responded "I want to represent myself."

*April 25, 1974* — Hearing on motion to sever trial from that of a co-defendant and on request for out-of-state

witnesses. The trial date was postponed partially because of the unavailability of the witnesses and partially because of the unavailability of the co-defendant who requested a postponement. The court denied the motion to sever but because of defendant's complaint that this caused him a delay in trial the court said:

> "The case will not be further postponed, Mr. Austin. On May 31st the State will proceed to trial or the Court will direct an entry of a nol pros. Understand that?
>
> MR. AUSTIN: Yes, Your Honor.
>
> THE COURT: That is for sure. If I am sick in bed or if I am dead or dying, if I have a broken skull or something, I am going to send a memorandum to Judge Barrett and Judge Proctor that if anything happens to me, that some other judge would be appointed to preside so that the case can go forward.
>
> MR. BECKER: Thank you, Your Honor.
>
> THE COURT: This man is entitled to get his case tried. Now, I recognize there have been an awful lot of pleadings going on here since he filed a motion for a speedy trial,[3] and a lot of it has been instigated by him, which has the effect of postponing a trial, and for that reason I don't think Mr. Becker's constitutional rights have been injured in any way. Assign it for May 31st, it will not be taken out of the assignment, and will be tried. . . .
>
> THE COURT: All right. Motion for Severance denied. Motion Re Subpoenas for Out-of-State Witnesses denied, this motion having been adjusted by the State and defendant in open court. Case assigned for 5/31/74. No further postponements to be granted. Of course, if someone dies that will be a different proposition, and I will reverse myself, but I don't want anybody to die.

---

3. The record discloses no motion for speedy trial up to this time. The only motion aimed at that result is the June 3, 1974 motion to dismiss.

MR. BECKER: Your Honor, do I make another application for the two witnesses that we agreed on for the new date, the 31st, or does that cover that, too?

THE COURT: Which two?

MR. BECKER: Mr. Sarsfeld and Mr. Gililand he said they are going to appear voluntarily.

THE COURT: He [the State's Attorney] is going to notify them, and you also notify them of the trial date, and tell them it is your understanding that they will come voluntarily, and that you want them here, and please to respond to your correspondence, and advise you that they will be here. And if they say, no, they are not coming, let me know.

MR. BECKER: Thank you, Your Honor."

*May 28, 1974* — In addition to receiving defendant's waiver of his demand for jury trial, defendant's request for out-of-state witnesses was reheard. When the State refused to stipulate to the testimony of the witnesses the court said the witnesses would be made available:

"THE COURT: I will afford Mr. Becker the necessary wheels, whatever they are, I don't know, I am not going to look it up, whatever is necessary for him to issue a subpoena action, and I will grant it as to these two individuals. That is all you want now?

MR. BECKER: That is all I want.

THE COURT: If that is so, it is obvious the case cannot go forward tomorrow.

MR. BECKER: This again was a delay on his part, your Honor, on the State's part.

THE COURT: I understand that. But you want them here.

MR. BECKER: Yes.

THE COURT: So the delay has been given for your benefit. You can't get a subpoena in their hands —

MR. BECKER: He's in Washington, D.C., and Mr. Gililand is in the Federal Penitentiary in Lewisburg, Pennsylvania.

THE COURT: You can't get a subpoena in their hands today, that is obvious. But I will assign the case for trial — any other pretrial motions?

. . .

THE COURT: Do you need an order for issuance of subpoenas for these two out-of-State witnesses?

MR. AUSTIN: I will prepare it, your Honor.

THE COURT: Prepare an order, and get Mr. Becker — you have been very cooperative, Mr. Austin — and give Mr. Becker further cooperation to get the names and addresses, if you don't already have them, and see to it that a subpoena, the necessary order is signed, and a subpoena is issued. How long will it take non-jury?

. . .

THE COURT: Why don't the two of you go back in the State's Attorney's office and get these gentlemen separately on the phone, and find out when they are available, and assign it for a time when they can be here? And if necessary I will recess this jury case, say, from a Tuesday to a Thursday or a Monday to Wednesday, or something like that, and fit this in so we can get rid of it; I want to get rid of it, you want to get rid of it.

MR. BECKER: One other question, your Honor. Again, Mr. Austin indicated to me again this morning that Mr. Lano will appear voluntarily. Do you remember, we talked about the F.B.I., and you said notify the local office here? Again I ask you the same question.

MR. AUSTIN: To my knowledge, he said as long as we give him sufficient notice he would be here.

THE COURT: Talk to him today on the phone,

and say, look, we appreciate your willingness to appear voluntarily, don't get mad with us, we are going to issue you a subpoena anyway."

*June 3, 1974* — Defendant filed Motion to Dismiss Indictments for Lack of Prosecution.

*June 7, 1974* — The hearing on Motion to Dismiss Indictments for Lack of Prosecution was treated by the court as being a motion to dismiss on grounds of lack of speedy trial. The motion was granted by the court which placed the blame for delay on the State seemingly because the State had not produced the defendant's out-of-state witnesses:

"THE COURT: The case was set for February 7th, and it was postponed at the State's request.[4] We had a hearing before me on April 16th relative to getting these out-of-state witnesses present for trial on the 29th, and at the hearing I told you that you would have until April 24th to notify Mr. Becker's out-of-state witnesses so that the trial could go forward on April 29th. And there was a further hearing on April 25th, at which time the case was postponed because, in my opinion because of the lack of vigor and industry on the part of the State in getting this case ready for trial, it was postponed until May 31st. Implicit in all this conversation relative, for example, to Mr. Sarsfeld, on page 7: 'Mr. Austin: He is in Washington, D. C., with the Federal Energy Office, your Honor. I can call him back and tell him we would like to have him here, and it would be up to Mr. Becker to discuss his testimony with him.' 'The Court: Call him, and arrange to have him here. That takes care of that.' At that time on page 15 of the transcript the May 31st date was postponed because of your request, because you said Mr. Corbin was in

_____

4. There is nothing in the record or docket entries to indicate either that the case was set or postponed.

custody out in Missouri, and you couldn't get him here. You could have gotten him here, you have just told me you could have, you answered my question directly, yes.[5]

MR. AUSTIN: Your Honor, as I recall, if I may be heard briefly, your Honor came into criminal jury with the April term of court. As soon as your Honor got into criminal jury I contacted your office, got a trial date of the 29th.

THE COURT: We had preliminary hearings so that it could go forward on the 29th.

MR. AUSTIN: Your Honor, the interstate agreement on detainers gives the prisoner whose custody is requested 30 days to object. And acting as fast as I could, there was not 30 days between the time we requested him and the time of the trial; although we had thought that perhaps —

THE COURT: Wait a minute, Mr. Austin. Don't quibble on this. We had a hearing, and I assigned this case for hearing on April 29th, and you could have notified him any time after that case was assigned for hearing on April 29th. Thereafter it was postponed until May 31st. So you had well more than 30 days.

MR. AUSTIN: Not prior to the 29th trial date, your Honor.

THE COURT: You had plenty of time prior to the May 31st trial date.

MR. AUSTIN: He was here for the 31st trial date, your Honor. As you recall, Mr. Goldberg could not be present, and —

THE COURT: But the State wouldn't go forward as to this man without going forward as to Corbin. I don't care about Corbin, he is not before me. This

---

**5.** "MR. AUSTIN: . . . Because of the time period involved with the interstate agreement on detainers, it wasn't possible to physically get him [the co-defendant] here.

THE COURT: It could have been possible if you had acted sooner, couldn't it? Answer yes or no.

MR. AUSTIN: Yes."

man is entitled to a speedy trial. And I told you at that time, and I will read it. 'The case will not be further postponed, Mr. Austin. On May 31st the State will proceed to trial or the court will direct an entry of a nol pros. Understand that? Mr. Austin: Yes, your Honor. The Court: That is for sure. If I am sick in bed or if I am dead or dying, if I have a broken skull or something, I am going to send a memorandum to Judge Barrett and Judge Proctor that if anything happens to me, that some other judge would be appointed to preside so that the case can go forward.' It is now June 7th, and Mr. Becker has made a motion for a dismissal of the charges against him.

MR. AUSTIN: May I be heard briefly?

THE COURT: You have been heard, I heard you until you sat down, Mr. Austin; you can't get five or six bites at the same apple. Sit down, Mr. Austin. You have a right to take an appeal from my ruling. The Defendant has made a motion to dismiss the indictments for lack of prosecution. There eventually has to be a time when under the law and under the decisions of the Supreme Court a person who is asking to be tried has a right to be tried or have the charges dismissed. That time has been reached in this case. The motion will be granted. You can still go forward as to the co-defendant. The entry will read —

MR. BECKER: I think he's left the courtroom, your Honor.

THE COURT: What? Tell him to come back here, Mr. Tormino.

MR. SEIBERT: He thought you were finished, your Honor.

MR. BECKER: Your Honor, on behalf of myself and my family I'd like to thank you.

THE COURT: Don't thank me, I am simply doing the duty that is imposed upon me by my oath of office.

MR. BECKER: Thank you, your Honor.

THE COURT: The docket entry will read: Defendant Becker's motion to dismiss granted. Indictment dismissed as to the Defendant Becker."

The judge was correct when he advised the State that it had a right to appeal. *State v. Hunter,* 10 Md. App. 300, 307. We do not agree as readily that appellee was denied a right to a speedy trial.

### Constitutional Dimension and Length of Delay

In order to decide whether or not appellee has been denied a speedy trial we must first determine whether there has been any true "delay" in the constitutional sense. *State v. Jones,* 18 Md. App. 11. That case points out at 22-23:

> "If, upon preliminary examination, we may determine that there has been no 'delay' of 'constitutional dimension' — if the claim of 'speedy trial' denial is clearly frivolous — if the passage of time is patently not inordinate — we are relieved of all necessity to make further analysis. If this threshold of 'constitutional dimension' has not been crossed, there is no need for the delicate weighing of social values in order 'to balance the right of the individual to obtain a speedy trial against the right of society to punish those who are properly shown to have committed a crime against it.' There is no need to look to the subtle interaction of the four factors: (1) length of delay, (2) reason for delay, (3) prejudice to the accused, and (4) assertion of the right by the accused. *State v. Lawless,* [13 Md. App. 220,] 229-232."

The time to be counted runs from the time "the putative defendant in some way becomes an 'accused' . . . ." *United States v. Marion,* 404 U. S. 307, 313; *Jones,* 18 Md. App. at 16. For appellee this came as a result of his indictment on August 27, 1973. The only trial dates shown in the record were to have been April 29, 1974 and then May 31, 1974. Neither eventuated because the defendant's witnesses were not made available and the State did not bring a co-defendant from a Missouri prison in time.

Whether we view the period as nine and a half months or measure it from when trial was first set makes some, but little, difference. While we recognize that the Legislature, attempting to expedite criminal trials, has given us guidance by establishing six months from arraignment as a benchmark, Md. Code, Art. 27, § 591, that is but a single factor to consider in resolving the question of denial of a speedy trial. *Young v. State,* 15 Md. App. 707; *Hunter v. State,* 16 Md. App. 306. On more than a dozen occasions we have held as insubstantial delays from four months in *Britton v. State,* 10 Md. App. 70, to twenty-three months in *State v. Williams,* 6 Md. App. 5. The length of the delay is simply ". . . a triggering mechanism . . . . [T]he length . . . that will provoke . . . an inquiry is necessarily dependent upon the peculiar circumstances of the case. . . . [T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker,* 407 U. S. at 530-531.

Nine and one-half months standing alone may get us over the threshold of constitutional dimension but is, alone hardly "substantial" unless intentional or at least the result of utter disregard or irresponsible neglect on the part of the State. It is, however, sufficient to persuade us to look deeper in the cause.

### The Reason for Delay

In seeking the reasons for delay we again find in *Barker* that different weights should be assigned to different reasons, the heaviest being ascribed to deliberate attempts to delay whether to hamper the defense or to gain a tactical advantage. No such intentional delay is asserted. To the contrary, the record negates any such inference. "A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker,* 407 U. S. at 531. It is within the latter category the State finds itself, at least as to the more suspect period after hearing April 25, 1974 when the State

admitted it would be unable to produce the co-defendant for trial on the date set. In looking to the record we find that the accused filed over a dozen pro se petitions and demands which required three hearings. Had these issues not been resolved pre-trial, the accused could properly have complained about their delayed resolution and undoubtedly would have done so. These motions, while proper, placed an additional burden on a court already overtaxed by numerous and complex cases. In our overburdened judicial system defendants regrettably must upon occasion forego expedition in return for added attention. Even if we agree with the trial court's conclusion that there was a degree of dilatoriness on the part of the State in acquiring the defendant's witnesses (notwithstanding the State's expressed reason for agreeing to do so in order to attempt to meet the assigned trial date) appellant's claim would still not rise above the "more neutral reason" which is "weighed less heavily . . . but nevertheless should be considered." *Barker, supra.*

A great portion of the delay, even after April 16, 1974, (the first hearing on appellee's request to subpoena out-of-state witnesses) was directly attributable to appellee and could largely have been averted had he not declined assistance of counsel.[5A] Appellee wanted certain witnesses summonsed for his trial. The record indicates that the prosecutor agreed to aid appellee in securing the attendance of these witnesses in order to expedite proceedings. The judge who dismissed the indictment had denied Mr. Becker's request to summons them in the belief that both appellee and the State, under his direction had either agreed that certain of the witnesses would not be necessary or that the witnesses would come without a subpoena. As it turned out, and as the prosecutor pointed out at the June 7, 1974 hearing, at least two of the witnesses needed subpoenas. There was no evidence of any culpable attempt to stall the trial on the part

---

**5A.** We are unable to find in the record any indication that the trial judge conducted the waiver inquiry required by Md. Rule 719 c. prior to permitting defendant's waiver of counsel. On remand, the proper inquiry should be conducted and the record should so indicate.

of the prosecutor, especially since he was attempting to help appellee who did not have counsel and who had waived his right to counsel. This we think is at the heart of the problem.

Appellee had every right to waive counsel; however, the judge was wrong in then directing the State to assist the man it was prosecuting. The State in turn was equally in error by offering — or even accepting — that responsibility. The record indicates that both judge and prosecution were tactically outsmarted by appellee who step by step led them to the course they eventually pursued.

The expressed *reason* for the delay at the final hearing was the absence of defendant's witnesses. We think the appellee must equally share responsibility with the State whose wrongful conduct was no more than ineffective, but well-intentioned aid.

### The Assertion of the Right

The "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U. S. at 532. At no time does the record disclose that appellee demanded or requested an early trial until his objection to postponement of the April 29, 1974 date.[6] This belated lament which came in the form of oral argument was asserted to reinforce a motion for severance. Encouraged by the "come hell or high water" remarks of the trial judge, *supra*, four days prior to the June 7, 1974 hearing he filed the Motion to Dismiss the Indictment for Lack of

---

**6.** Appellee argued that he had "filed for a speedy trial" in August of 1973 (he was not indicted until August 27, 1973), however, there is nothing in the record to support the assertion made during argument on April 25, 1974.

"MR. AUSTIN: This man has waived his right to a speedy trial, Your Honor, by his activities in the past. We were ready to go to trial once before, and this man prayed a jury trial, and he has since then delayed it by his, — any delay that has been occasioned in this case has not been the result of the State. This is the first postponement requested on behalf of the State.

MR. BECKER: Your Honor, back on October 29th, 1973, I note the date I was brought here before Judge Cicone, in August I filed for a speedy trial, and I had done everything, even under the Gibbons decision from the Supreme Court, I was brought here and housed in your jail, to propose a defense —"

Conviction which was granted. While the right was not waived, it could hardly be said that it was asserted either.

## Substantial Delay

We must now consider whether appellee has demonstrated "substantial delay." If so, there was created a rebuttable presumption of prejudice which would have shifted the burden of going forward with the evidence to the State. *Lawless,* 13 Md. App. at 232-233. To determine the "quantitative and qualitative degree of delay" which will give rise to the presumption of prejudice causing the burden to shift, we have noted that the factors used in the overall *Barker v. Wingo,* weighing process are the same ingredients which must be weighed and analyzed.

Our preceding analysis indicated that there was no inordinate length of delay, that the reasons for it were neutralized by the State's submission to the judge's erroneous direction to acquire the accused's witnesses, and that the right was belatedly asserted. Appellee makes no allegation that the reasons for delay by the State were deliberate. Additionally, our independent review reflects "no likelihood of prejudice to the person of the appellee and no demonstrated prejudice to [his] defense." *Jones,* 18 Md. App. at 28. This adds up to a failure to show either the "quantitative or qualitative degree of delay [which] will give rise to a rebuttable presumption of prejudice and will shift the burden of going forward with the evidence from the accused to the State." *Lawless,* 13 Md. App. at 233. Having failed to shift the burden to the State, there rests upon the accused, as the moving party, the burden of demonstrating actual prejudice.

At this juncture, however, the trial judge incorrectly treated the burden as having shifted and called upon the State to justify the delay. Even were we to assume, *arguendo,* that the State was burdened to explain its actions, we think it adequately did so:

> "Your Honor, not having had the transcripts before
> me, I forget exactly which hearing it was Mr.
> Becker raised these same points previously about

his having been denied a speedy trial. At that time I argued to the court that Mr. Becker could have been tried last December; he came in, the witnesses were here, we were ready to go to trial, but he prayed a jury trial at that time. Since then, of course, he has changed attorneys, he has gotten out on parole, he has asked the witnesses be summonsed, all of which I would think would have worked to his benefit and not to his detriment. I would think the delay in bringing him to trial had not hurt him but benefited him in this regard. Even if there is some prejudice, it has not been brought on by any acts of lack of diligence on the part of the State, rather by Mr. Becker's own acts, especially in view of the fact that he has now elected to proceed before the court without the aid of a jury, which he could have done on December 7th."

Whether or not the delay had reached substantial proportions, after hearing the State's proffered justification the court never called upon the accused to meet his burden of showing actual prejudice. Instead, it continued to shelter him with the judicial mantle. Despite the absence of an affirmative showing, we turn to the record for indications of prejudice.

### Prejudice to Appellee

Deprivation of the right to speedy trial may adversely affect three primary interests of a defendant. *Barker,* 407 U. S. at 532. Here only one of these interests we find to have been adversely affected and then we know not for which period.

The first interest affected is prevention of oppressive pre-trial incarceration. Although initially confined for other causes in federal prison, it may be inferred from the record that the detainer for this case suspended appellee's eligibility for parole notwithstanding bail was set for this offense. Beyond that inference from unexplained papers filed in the record, we have no evidence of the period during which he was so detained.

The second interest is minimization of the accused's anxiety and concern. We find nothing in the record to indicate anxiety and concern beyond that which might be expected. Each day following an indictment must hang heavily over any accused person. In this instance it did not appear so discomforting as to distinguish it from the apprehension inherent in any case of like nature.

The third interest is the most serious and is the core of prejudice, *viz.*, "to limit the possibility that the defense will be impaired." *Barker*, 407 U. S. at 532. This element of prejudice certainly cannot be relied upon by appellee.

We note in passing that it is not always essential to affirmatively demonstrate prejudice, since it is but one of the factors to be considered; nor is prejudice confined to one's inability to defend, *Moore v. Arizona*, 414 U. S. 25. In the absence of appellee's proof of prejudice inferable from the mere length of delay or from the reasons for the delay, together with his failure to assert his right, we are left only the possible presence of actual prejudice. As we have noted, appellee has failed to demonstrate it.

Having adhered to the admonition of the Supreme Court in *Barker*, to consider each case on ad hoc basis in light of the criteria espoused, we have carefully reviewed the record, we have analyzed that which we have reviewed, and we reverse the decision of the trial court. Indeed we find appellee barely negotiated the initial threshold of "constitutional dimension," if indeed he did so. Concededly, it may have been the very paternalism we sought to avoid, rather than the factual posture of his case, which compelled us to extend the review prescribed by *Barker*. We have done so nonetheless and can find nothing to justify the dismissal. If there were additional evidence or issues not brought to our attention because of absence of counsel, appellee is solely at fault. The society that provided him counsel if he chose, has a right to expect absolute impartiality on the bench and vigorous advocacy on its behalf.

*Order dismissing indictment reversed and case remanded for further proceedings.*
*Cost to be paid by appellee.*