## STATE OF MARYLAND *v.* STANLEY HIKEN

[No. 953, September Term, 1978.]

*Decided September 6, 1979.*

The cause was argued before MOYLAN, MOORE and MACDANIEL, JJ.

*Stephen Rosenbaum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Haven Kodeck, Assistant State's Attorney for Baltimore City,* on the brief, for appellant.

*Joseph F. Murphy, Jr.,* for appellee.

MOORE, J., delivered the opinion of the Court.

In compliance with Maryland Rule 746,[1] the trial of appellee, Stanley Hiken, under four indictments charging him with arson and related crimes, was scheduled for December 19, 1977 in the Criminal Court of Baltimore, 3 months and 12 days from the date of the indictments. The trial did not take place as scheduled, however, essentially because the State's evidence — in the possession of the Baltimore Police Department Arson Squad — was subpoenaed approximately 2 weeks before the trial date by the United States District Court for the District of New Jersey in connection with a grand jury investigation in that jurisdiction of the same occurrence.[2] Nine months and 23 days from the date of Mr. Hiken's arrest, the court below (Allen, J.) granted appellee's second motion to dismiss for lack of a speedy trial. The State seeks a reversal. Finding no error, we will affirm.[3]

# I

There was no evidentiary hearing below. Appellee's motion to dismiss for lack of a speedy trial was granted at the last

---

1. Maryland Rule 746, effective July 1, 1977, provides in subsection (a) that a trial date must be set "within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 723 (Appearance — Provision for or Waiver of Counsel), [and that] a trial date shall be set which shall be not later than 120 days after the appearance or waiver of counsel or after the appearance of defendant before the court pursuant to Rule 723." Under subsection (b) the county administrative judge or his designee may grant a change of the trial date upon motion in writing or in open court and "for extraordinary cause shown." (Appellee's counsel entered his appearance on Sept. 27, 1977.)

2. Subsequent to oral argument in this appeal, we were informed that appellee was indicted on May 23, 1979 in the United States District Court for the District of New Jersey, in a five-count indictment. The charges included conspiracy, wire-fraud, and racketeering, all arising out of a fire in Baltimore on December 11, 1976.

3. The case of *State v. Hicks*, 285 Md. 310, 403 A.2d 356 (1979) held that Md. Rule 746 is mandatory and not directory, overruling *Young v. State*, 15 Md. App. 707, 292 A.2d 137, *summarily aff'd*, 266 Md. 438, 294 A.2d 467 (1972), and that dismissal of the indictment is ordinarily the appropriate sanction for violation of the 120-day trial date requirement. The *Hicks* case could *not* be determinative of this appeal, however, because, as the Court of Appeals ruled — on motion for reconsideration — in a *per curiam* opinion filed on July 19, 1979, the holdings in *Hicks* "will be entirely prospective, applying only to future criminal prosecutions and only to those pending cases where, as of our mandate in this case, there have been no appearances of counsel or first appearances of defendant pursuant to Rule 723." *Id.* at 338.

of five proceedings in open court[4] on June 30, 1978 after extensive colloquies between court and counsel and upon a proffer of evidence with which the State substantially agreed. The operative facts may be summarized as follows:

Appellee, Stanley Hiken, conducted a formal men's wear business in Baltimore City. In connection with this business, Hiken maintained a warehouse for formal wear storage at 1640 East Baltimore Street which was owned by S. Hiken Formal Wear, Inc. A fire occurred at the warehouse on December 11, 1976. A 9-month investigation into the fire was conducted by the Office of the State's Attorney and the Arson Squad of the Baltimore City Police Department. During this 9-month period, Mr. Hiken's records were subpoenaed as were members of his family and other individuals who appeared and testified before the grand jury. Mr. Hiken ultimately was charged, in four separate indictments, with arson of the warehouse,[5] conspiracy,[6] solicitation, and insurance fraud.[7]

On September 7, 1977, the date of the indictments, Hiken was arrested at his place of business in the 3600 block of Eastern Avenue in Baltimore City. Detective John Dillon of the Arson Squad took him from his establishment in handcuffs and drove him to the Southeastern District of the Baltimore City Police Department. There, after the prosecution pressed for the surrender of his passport, he was released on his own recognizance.

A trial date was set for December 19, 1977. In November, the United States District Court for the District of New

---

4. These proceedings took place on December 16, 1977, December 19, 1977, January 17, 1978, February 8, 1978, and June 30, 1978. The first proceeding was occasioned by the State's motion for a continuance of the trial date to which the defendant objected. The subsequent hearings were in connection with motions addressed to the indictments by the appellee, culminating in the second motion to dismiss for lack of a speedy trial.

5. Md. Ann. Code art. 27, §§ 7, 10 (a), 111 (1976 & Supp. 1978).

6. *Id.*, § 38 (1976).

7. *Id.*, art. 48A, § 233 (1979).

Jersey [8] subpoenaed appellee's business records. [9] An Assistant United States Attorney in New Jersey, Thomas McKay, III, was aware of Mr. Hiken's Maryland trial date. Nevertheless, at a meeting in his office in Camden, New Jersey on December 7, 1977, [10] attended by appellee's counsel, James F. Murphy, Jr., by Assistant State's Attorney Haven Kodeck of Baltimore City, and Detective John Dillon of the Baltimore City Police Department, Mr. McKay served a subpoena *duces tecum* upon Detective Dillon, returnable before the grand jury in Camden on December 13, 1977. Mr. Dillon was ordered to bring "all documents, reports, physical evidence, or other materials in [his] possession pertaining to the investigation of a fire at 1640 E[ast] Baltimore Street, Baltimore, Maryland, on 12/11/76."

Detective Dillon delivered documentary and physical evidence to the New Jersey grand jury on December 13, 1977, as required by the subpoena. Thereupon, Mr. Kodeck indicated to Mr. Murphy that a request for a change of Mr. Hiken's trial date of December 19, 1977 would be made. No motion was filed. Mr. Murphy requested a formal hearing, on the record, in the chambers of the Honorable Anselm Sodaro, then Administrative Judge.

*Proceedings before Judge Sodaro, December 16, 1977.*

Appellee's counsel assured Judge Sodaro that he was ready and desirous to proceed to trial. The court suggested to Mr. Kodeck that xerox copies of the State's evidence be obtained but the latter responded that copies could not be provided "at this late date." With extreme reluctance, Judge Sodaro removed the case from the trial calendar, preserving, however, the December 19th trial date for the hearing of

---

**8.** We glean from the record that the United States Attorney's Office and the Grand Jury in the United States District Court for New Jersey were investigating the possible involvement in the Baltimore arson of two individuals also engaged in the formal wear business in Pennsauken, New Jersey.

**9.** Xerox copies were later obtained by Mr. Hiken's counsel and were in his possession in time for the trial date of December 19, 1977.

**10.** The purpose of the meeting was to review tapes that might contain exculpatory evidence in Mr. Hiken's case and that of a co-defendant in the Maryland proceedings.

motions, filed on December 14th and December 16th, to dismiss all but the arson indictment. Judge Sodaro stated:

*"I must agree with counsel, for both parties, that the United States Attorney acted highhandedly, and not only did he act high-handedly, but he has, in fact, caused embarrassment to the defense and the State, and the administration of justice of this city, because, obviously, it's an important case. It was especially set for trial for a particular court."* (Emphasis added.)

He also stated that upon the return of the evidence from New Jersey, forecast by Mr. Kodeck for the following month, he would "make available, the Court to which this case has been assigned, Criminal Court Part XI, at anytime, even including the postponement of cases and assignments that have been scheduled for the Court so that this case may proceed expeditiously."

*Proceedings before Judge Allen, December 19, 1977.*

When appellee's motions came on for consideration by the court (Allen, J.) on December 19, 1977 — the date which was to have been the trial date — counsel for Mr. Hiken informed the court at the outset that his motions were addressed to the related charges but not the "substantive indictment," the arson indictment. He said, "We request an immediate trial on that issue." Subsequently, he informed Judge Allen: "[I] sincerely believe that my client is entitled to an immediate trial. The defense is ready to proceed and indicated to the chief judge on Friday that we were ready to proceed." The court observed that the matters presented were of some complexity and that the State should file a reply. The State requested, and received, a period of *three weeks* for that purpose.

*Proceedings before Judge Allen, January 17, 1978.*

When the case came again before the court on the pending

motions on January 17, 1978, Judge Allen stated at the very outset:

"Mr. Kodeck, Mr. Murphy has made his position very clear, he insists on trial for his client, as he calls it, *immediate trial.*" (Emphasis added.)

The State then advised the court that it had been *unable to complete the research necessary to respond to the defense's motions.* An additional two-week period of time was requested. Judge Allen granted the request but ordered that "the material" be submitted to him by January 31 and that the hearing be held on February 7th. Before the conclusion of the proceedings, counsel for Mr. Hiken restated his objections to the original postponement of the trial and informed Judge Allen of the proceedings in New Jersey which had been the occasion of the change of the trial date by Judge Sodaro. Counsel stated that "extraordinary cause" within the meaning of Rule 746 had not been shown and that the State should have moved to quash the subpoena served upon Detective Dillon. The court ordered that a transcript of the proceedings before Judge Sodaro be obtained. The court also ruled, "at this time I'm going to deny Mr. Murphy's motion for an immediate trial. I guess it it's a motion for speedy trial."

*Proceedings before Judge Allen, February 8, 1978.*[11]

The court, having read the State's memorandum in response to appellee's pending motions addressed to the indictment charging conspiracy, solicitation, and insurance fraud, questioned the State's Attorney and defense counsel extensively with respect to the matters of law and fact involved before taking the motions under advisement. He assured counsel that he would rule expeditiously upon the motions.[12] Before adjournment, the court inquired of counsel whether the case had been continued indefinitely by Judge

---

11. Although set by Judge Allen for February 7 at the hearing on January 17, the date was changed by the Criminal Assignment Office to February 8.

12. As indicated *infra,* the court issued its order with respect to the motions, a week later, on February 15, 1978.

Sodaro or merely "postponed." The State replied, "It was just continued until such time as the evidence that was subpoenaed from [the] Baltimore City Police Department to [the] New Jersey authorities was returned to the Baltimore City Police Department." Counsel for the defendant confirmed this statement but added, "But it's a situation, I think, you know, a rose by any other name and regardless of whether it's characterized as a postponement or a continuance, I continue to insist upon an immediate trial for my client and have done so at every juncture."

The court then rejoined:

"Mr. Murphy [defense counsel], it's very clear that you are laying the groundwork brick-by-brick. You always ask for an immediate trial and what I'm concerned about is this: maybe I really shouldn't be concerned about it but we don't have any control over this continuance if we are dependent upon another jurisdiction and another court system to release some documents and we are now, how many months since indictment?

MR. MURPHY: September was the indictment.

THE COURT: September 7th, October, November, December, January, five months, *and with Mr. Murphy insisting very strongly at every meeting, insisting on an immediate trial we may be moving towards the point that our courts are going to say that, appellate courts are going to say that a continuance is a postponement.* I really think. I don't know what could be done about it *but it seems to me the State ought to make some sort of demand for the return of these records. I think the burden is on the state to make some motion in that direction.*

Have you done that as yet?

MR. KODECK:*Not as yet, Your Honor. I believe that the prospects of getting them back are very imminent.*

THE COURT: Because when Mr. Murphy gets up around six months he's going to be talking about

speedy trial and things like that and I don't know what the Court of Appeals would do in a situation where we have allowed, not we, but the State has allowed instruments to get out of its hands that delay the trial and have not insisted on getting them back. So, I'll dispose of all your motions within a day or so and let you know.

MR. MURPHY: Thank you, Your Honor. Again, the issue where the evidence is and why it's unavailable to the State has again come up and Your Honor is familiar with the history of how it got there and the prejudicial effect it has on my client as proffered the last time we were in court. So, it is for that reason that I request that the indictment be dismissed and that the dismissal order entered very shortly.

THE COURT: I will rule on your motions. That's the best I can do. I will rule on your motions —." (Emphasis added.)

The court's ruling on the motions was almost immediately forthcoming. On February 15, 1978, Judge Allen (a) dismissed the indictment charging solicitation to commit arson; (b) denied the motion to dismiss the insurance fraud indictment; (c) denied a motion to suppress certain financial records allegedly acquired contrary to Md. Ann. Code art. 11, §§ 224-227 (Supp. 1978); and (d) denied the motion to dismiss the conspiracy indictment, granting the State leave to amend that indictment "by interlineation to add the names of co-conspirators whose identities were known or should have been known to the Grand Jury at the time of indictment."

*Further Motions to Dismiss Indictments.*

On March 2, 1978, counsel for Mr. Hiken filed a motion to dismiss the remaining three indictments, claiming that the State's "action and inaction" had violated Mr. Hiken's right to a speedy trial. The motion stated in part:

"7. Nearly six months have passed since the Defendant has been indicted, and the State has taken

no action to set these charges for trial on the merits. Defendant again alleges that none of the postponements or continuances requested by the State have been for 'extraordinary cause' within the meaning of the above-captioned Rule [746 (b)] because *the State has taken no steps to prevent the actions of the federal government which the State alleges to have caused its inability to present its case to a trier of fact."* (Emphasis added.)

The record contains no response by the State to this motion. It appears that some time in March the evidence was returned by the New Jersey federal authorities. We are told that the defendant's counsel was not informed of their receipt. The record does not reflect any action by the State, at that juncture, to obtain a new trial date in accordance with Judge Sodaro's instructions of December 16, 1977.

On May 2, 1978, essentially on the basis of a denial of due process, counsel for Hiken filed a motion to dismiss the indictments and a comprehensive supporting memorandum. The principal grounds for the motion were that: (1) one Monty Artwell, who had previously given testimony under oath before the Baltimore grand jury, and whom Mr. Hiken intended to subpoena as a witness, had given false testimony in New Jersey involving the fire and was subject to a perjury indictment there; [13] and (2) the Maryland State authorities and the New Jersey federal authorities were "engaged in a joint investigation which caused the first postponement of this case and subsequent violations of Defendant's rights." The latter violations, as particularized in the motion, were serious, alleging that: State and federal authorities were engaged in an abuse of the grand jury process, the end result of which was to enable Maryland authorities to gather evidence for criminal charges pending before the Criminal Court of Baltimore, which it would not otherwise constitutionally be able to obtain. "The facts of the instant case clearly cry out for the intervention of this Honorable Court," the memorandum insisted.

---

13. It appears that Artwell was, indeed, later indicted for perjury.

Judge Allen instructed the State to respond in writing. Although a reply memorandum was apparently submitted, it is not contained in the record before us.

On June 22, 1978, however, Hiken filed a "Second Motion To Dismiss For Lack Of Speedy Trial," in which it was stated that the State's answer to the defendant's May 2nd motion "simply argued that the matters raised therein be deferred until trial." Appellee's motion continued:

> "Specifically and of paramount importance to the instant Motion, the State's response to the aforegoing Motion mentions *absolutely nothing* about the Defendant's claim that the office of the State's Attorney for Baltimore City and the Baltimore City Police Department has engaged in a deliberate strategy to delay the trial in order to work with the office of the United States Attorney for the District of New Jersey in the hope that the latter law-enforcement agency shall develop evidence not now in the possession of the State. Therefore, the Defendant's allegations must be taken as true for purposes of the Court's disposition of this Motion." (Emphasis in original.)

*Proceedings before Judge Allen, June 30, 1978.*

In open court on June 30, 1978,[14] extensive colloquies again took place between the court and counsel with respect to the pending motions. During the course of this hearing, Hiken's counsel complained again, as he had at virtually every other hearing, that the action of the federal authorities in New Jersey not only made possible the discovery of evidence against Mr. Hiken which normally would not have been available to the State, but that it was also contrary to stated policy of the Department of Justice in connection with the exercise of the power to prosecute a defendant under both

---

14. The transcript of this proceeding discloses that the attorneys and Judge Allen conferred in chambers on June 29, 1978 concerning the motions to be heard the following day and that the Assistant State's Attorney and defense counsel agreed that a trial date would be selected after disposition of the motions, if necessary.

federal and state law for the same act or acts. *See Claybrooks v. State,* 36 Md. App. 295, 304-05, n. 5, 374 A.2d 365, 371 (1977). That policy, as disclosed in *Claybrooks,* was based upon a 1959 Memorandum to United States Attorneys from then Attorney General William O. Rogers. It stated that the power to conduct a federal prosecution after a State prosecution "has been used sparingly by the Department of Justice in the past. The purpose of this memorandum is to insure that in the future we continue that policy. After a State prosecution there should be no federal trial for the same act or acts unless the reasons are compelling." The federal policy, as represented to the lower court by counsel for Hiken, was, however, that "once there's a completed State prosecution the Justice Department will not permit an indictment unless the Attorney General himself authorizes it, so had this case proceeded to trial on December 19, 1977, for better or for worse, whatever the result was for Mr. Hiken, the Justice Department's policy would have precluded his indictment in New Jersey absent the actual written authorization of the Attorney General of the United States." The latter statement is not supported by the policy memorandum quoted above from the opinion of this Court in *Claybrooks.*[15]

As previously indicated, there was no evidentiary hearing on June 30, 1978, but counsel for the defendant made a proffer of facts with which the State substantially concurred.

---

15. The State's brief on this appeal points out that the Justice Department's policy on this subject at the time of the hearing in this case was contained in a memorandum of then Attorney General Edward H. Levi, dated January 18, 1977, *reprinted in* 24 Crim.L. Rptr. 3001 (Nov. 22, 1978), stating in part:

"*Prosecution in another jurisdiction* — The nature of the offense may be such that the federal interest in prosecution is less substantial than the interest of state or local authorities. In such cases it is entirely appropriate for the attorney for the government to consider deferring to state or local prosecution, especially if it appears that the state or local prosecution would be successful and would result in the imposition of an appropriate sentence."

Mr. Levi emphasised that the above was not to be construed in the nature of "guidelines" and that "they impose no obligations on United States Attorneys, their assistants, or other attorneys for the government [nor do] they confer any rights or benefits, substantive or procedural, enforceable at law by any party to litigation with the United States."

At the conclusion of the hearing, appellee's due process motion filed on May 2, 1978 was denied. The second motion to dismiss for lack of a speedy trial filed on June 22, 1978 was granted. The court observed that what "makes the nine months different from any other nine months was the loss to the federal authorities of the evidence required to proceed here, when they really didn't have to do it and when they could have fought the subpoena and went ahead and tried his case." Judge Allen concluded that the *Barker* [16] analysis had been triggered, that appellee's right to a speedy trial had been repeatedly asserted and that the State's Attorney had not rebutted the presumption of prejudice which arose from the 9-month, 23-day delay. In so concluding, Judge Allen stated in part from the bench:

> "The State has failed to even suggest or the State has suggested there's no prejudice, but there is a substantial representation by the defense that prejudice is very substantial, *and in fact the defense feels that the Defendant is going to be indicted almost momentarily, and that once he is indicted the prejudice will be insurmountable because then he will stand for trial in two jurisdictions, perhaps.* And the defense attaches even more lurid motives to the State's saying what they intend to do is simply to hold Mr. Hiken in some sort of suspended animation down here in Maryland until he's indicted in New Jersey and nol pros the cases down here.
>
> Of course, that is just speculation; isn't it, Mr. Murphy, speculation. *But the facts come through loud and clear that this case is nine months old, almost ten months old and that the Defendant at the behest of another jurisdiction without ever any attempt to fight the seizure, not seizure, but the subpoenaing of certain documents to protect its own prosecution has allowed the case to be delayed a very substantial length of time.*
>
> I think the delay is prejudicial, and I'm going to

---

16. Barker v. Wingo, 407 U.S. 514 (1972).

grant the Defendant's motion to dismiss on the grounds of denial of speedy trial." (Emphasis added.)

## II

As we noted at the outset,[17] the Court of Appeals in *State v. Hicks,* No. 130, Sept. Term, 1978 (filed June 25, 1979), and on motion for reconsideration, filed July 19, 1979, has held that Maryland Rule 746 is mandatory and not directory but that this new interpretation is "entirely prospective." In cases like the instant appeal, not affected by the court's holding, Rule 746 remains directory only, not mandatory. The starting point, in our appraisal of the State's claims of error, is the familiar case of *Barker v. Wingo,* 407 U.S. 514 (1972).[18] The court in *Barker* held that four factors should be balanced in determining whether a defendant has been denied a speedy trial: the "length of delay; the reason for the delay; the defendant's assertion of the right; and prejudice to the defendant." *Id.* at 530.

### 1. Length of Delay.

The duration of the delay is the mechanism which triggers the analysis and is itself one of the factors to be balanced. *State v. Wilson,* 35 Md. App. 111, 371 A.2d 140 (1977), *aff'd,* 281 Md. 640, 382 A.2d 1053 (1978), *cert. denied,* 439 U.S. 839 (1978). Here, the period of delay extends from September 7, 1977, the date when Mr. Hiken was indicted and arrested, to at least June 30, 1978, when his motion to dismiss for lack of a speedy trial was granted, a period of 9 months and 23 days.[19]

---

17. *See* note 1, *supra.*

18. We observe that, even where there has been full compliance with Rule 746, the *Barker* analysis may well result in a finding that the accused's speedy trial rights were denied. In the instant case, as in *Hicks,* there was compliance with subsection (a) of Rule 746. It also appears that as of the date of the proceedings in chambers before Judge Sodaro, 3 days before trial, there was "extraordinary cause" for a change of the trial date.

19. A somewhat longer period of time may arguably be involved because no new trial had been set as of June 30, 1978, when the motion to dismiss was heard, and in all likelihood no such trial date could have been set without some additional delay.

We firmly reject the State's contention that the delay is not of constitutional dimension. As *Barker* held, "[T]he length of delay that will provoke such an inquiry is necessarily dependent on the peculiar circumstances of the case." *Id.* at 530-31. While the State correctly points out that the crimes charged here were not "ordinary street crimes" but crimes of greater complexity, it fails utterly to acknowledge the fact that a 9-month investigation by the police arson squad and the Office of the State's Attorney had preceded Mr. Hiken's indictment and arrest. Under these circumstances, the State was, or certainly should have been, ready for trial within a very short time after the indictments and the almost 10-month period involved is surely of constitutional dimension.[20]

### 2. Reason for the Delay.

A "brooding omnipresence" here is the subpoena issued by the United States District Court in New Jersey, almost two weeks before the trial date of December 19th in Part X of the Criminal Court of Baltimore. As we read the record, the Office of the State's Attorney for Baltimore City capitulated to an Assistant United States Attorney in Camden, New Jersey, showing little consideration for the orderly administration of justice in Maryland. We find no evidence that the top echelons of the Office of the State's Attorney of Baltimore City were in any way involved or concerned. It does

---

20. Wilson v. State, 281 Md. 640, 382 A.2d 1053 (1978) (4-year, 2-month delay was presumptively prejudicial); Jones v. State, 279 Md. 1, 367 A.2d 1 (1976), *cert. denied,* 431 U.S. 915 (1977) (2-year, 5-month delay was presumptively prejudicial); Epps v. State, 276 Md. 96, 345 A.2d 62 (1975) (1-year, 14-day delay was presumptively prejudicial); Smith v. State, 276 Md. 521, 350 A.2d 628 (1976) (16-month delay was prejudicial); State v. Dean, No. 591, Sept. Term 1978 (Ct. Spec. App. filed April 12, 1979) (2-year period prejudicial); State v. Statchuk, 38 Md. App. 175, 380 A.2d 225 (1977) (10-month, 21-day delay was prejudicial); Dorsey v. State, 34 Md. App. 525, 368 A.2d 1036 (1977) (11-month delay was prejudicial when case was relatively uncomplicated); Pyle v. State, 34 Md. App. 60, 366 A.2d 90 (1976) (11-month delay was prejudicial when case was relatively uncomplicated); Lee v. State, 32 Md. App. 671, 363 A.2d 542 (1976) (19-month delay was sufficient to trigger the *Barker* analysis); State v. Becker, 24 Md. App. 549, 332 A.2d 272 (1975) (9½-month delay was prejudicial); Matthews v. State, 23 Md. App. 59, 325 A.2d 897 (1974) (12-month delay was not prejudicial); McIntyre v. State, 17 Md. App. 526, 302 A.2d 672 (1973) (6½-month delay was prejudicial); State v. Hunter, 16 Md. App. 306, 295 A.2d 779 (1972) (5½-month delay was not prejudicial); Thompson v. State, 15 Md. App. 335, 290 A.2d 565 (1972) (5½-month delay was not prejudicial).

not appear that any effort was made, at appropriate levels, to moderate the demands of the Camden office so as to postpone compliance with the subpoena until after the trial in Maryland had occurred. No motion to quash was, it appears, even contemplated. Detective Dillon had no alternative but to deliver to the Camden office of the United States Attorney for the District of New Jersey everything that Maryland had as a result of nine months of investigation. The power of a court was invoked only after the evidence had been surrendered — and then only to pray a continuance.

Judge Sodaro very properly spoke of the "embarrassment" and "handicap" to the State of Maryland "because of the actions of the United States Attorney's Office in Camden, New Jersey. . . ." On the other hand, the Office of the State's Attorney for Baltimore City became clearly vulnerable to the charge, in appellee's brief, that it "did not want to begin Appellee's prosecution on December 19, 1977, and used the federal subpoena as an excuse not to do so."

The record does not disclose when the evidence came back from Camden except that it occurred some time in March 1978. We are told that the State made no effort to notify Mr. Hiken's counsel of its receipt. Patently, it made no effort to set the case for trial. The State, in its brief, argues that "the delay without a trial date being set from March 1978, when the evidence was returned, to May 2, 1978 [the date of appellee's motion to dismiss on due process grounds] again cannot be deemed anything but the orderly administration of justice [which] *Epps v. State,* [276 Md. 96, 345 A.2d 62 (1975)] labeled as neutral, not chargeable to either party." We reject this argument. Similarly, we reject the further statement in appellant's brief that:

> "The time period from May 2, 1978 to June 30, 1978 was taken up by the preparation, as ordered by the trial court, by the prosecution of a reply to defense counsel's May 2 motion and by the normal delay in the scheduling of a hearing on the motion. This time period is thus chargeable to Appellee."

The undeniable truth is that the absence of State's evidence,

not the intervening motions, was the cause of the delay. Surely, an accused who properly asserts by motion "technical defect defenses" should not be penalized in the evaluation by the court of his claim that he was denied his right to a speedy trial.

In our judgment, on the record before us, the responsibility for substantially all of the delay in this case must rest on the doorstep of the State.

### 3. Assertion of the Right.

The transcripts of the five court proceedings before Judge Allen abundantly support his conclusion that Hiken, through counsel, clearly and forcefully asserted his right to a speedy trial "at every possible turn."

The State argues that his assertion of the right was deficient because no *written* motion for a speedy trial was ever filed. This argument is untenable. Oral assertions of the right, on the record, are clearly sufficient. The State further contends that appellee's motions to dismiss for lack of a speedy trial do not support his claims of assertion of the right. The State's reliance, in this respect, on *Nocera v. State,* 36 Md. App. 317, 374 A.2d 608 (1977) is altogether misplaced. It is true that we stated there, in language quoted in the State's brief, that a motion to dismiss is "not a motion to be tried, but a motion not to be tried . . . and, therefore, does not tend to support appellant's argument that he effectively demanded a speedy trial." *Id.* at 321; 374 A.2d at 611. But the motion to dismiss in *Nocera* was not made until the day of trial. Here, the written motions were made in March and again in June of 1978, before any new trial date had been obtained by the State, despite the fact that the State's evidence had, at long last, been returned to Maryland from the federal authorities in New Jersey.

### 4. Prejudice to the Accused.

In *Barker v. Wingo,* the Court identified three interests of defendants "which the speedy trial right was designed to protect . . . : (1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern of the accused; and (3) to

limit the possibility that the defense will be impaired. 407 U.S. at 532. As Judge Moylan carefully explained for this Court in *State v. Wilson,* whenever the delay is of "constitutional dimension," as here, prejudice will be presumed. This presumption "is not conclusive but rebuttable." As Judge Moylan expressed it:

> "The State, for its part, may come forward and meet its burden of producing evidence and negate the presumed prejudice."

35 Md. App. at 124; 371 A.2d at 149.

Although there was no pretrial incarceration here, the trial court's characterization of the prejudice to the appellee as "very substantial" was amply supported. The anxiety and concern of the accused had to be extreme. All during the period of the delay, he was under a constant threat of indictment by the grand jury in New Jersey, an indictment ultimately returned but one which, as appellee argues with persuasive effect, might not have resulted if the case had proceeded to trial as scheduled in Maryland. Indeed, it was precisely the threat of a federal indictment which appellee's counsel cited, at every turn, in urging an "immediate trial" in Baltimore.

Again, although not relied upon by the trial court, there was evidence of impairment of the defense. In advance of the original trial date, counsel for Hiken applied for an intrastate subpoena for Monty Artwell. In testimony before the grand jury in Baltimore, Artwell said that an individual named Levin in New Jersey had sent Artwell to Baltimore to burn the appellee's warehouse and to make the appellee the scapegoat. This testimony was recanted by Artwell after the original trial date in this case and he was indicted for perjury. The State offered no response below to appellee's proffer that his defense had been prejudiced by the loss of Artwell as a witness; and, although the circumstances are somewhat bizarre, we do not accept the State's rationalization in its brief that "as of June 30, 1978 the substance of Artwell's testimony was speculative at best." The crucial date was December 19, 1977, the original trial date.

The court below properly held that the appellee was denied his right to a speedy trial and dismissed the remaining three indictments.

> *Judgments affirmed; Mayor and City Council of Baltimore to pay the costs.*