## STATE OF MARYLAND *v.* JOSEPH L. STATCHUK

[No. 109, September Term, 1977.]

*Decided December 7, 1977.*

The cause was argued before MOYLAN, MENCHINE and MELVIN, JJ.

*Gilbert Robinette, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Stephen B. Caplis, Assistant Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Timothy Martin, Assistant State's Attorney for Baltimore City,* on the brief, for appellant.

*Philip V. Tamburello* for appellee.

MENCHINE, J., delivered the opinion of the Court.

The following statements of charges were filed against Joseph L. Statchuk in the District Court of Maryland for Baltimore City:

| Charge | Date of Offense |
|---|---|
| False Report to Police Art. 27 § 150 | 2/25/76 |
| False Report to Fire Dept. Art. 27 § 151 | 2/ 5/76 |
| False Alarm of Fire Art. 27 § 156 | 2/ 4/76 |
| False Alarm of Fire Art. 27 § 156 | 1/15/76 |
| False Alarm of Fire Art. 27 § 156 | 1/26/76 |
| False Report to Police Art. 27 § 150 | 2/27/76 |

He was arrested on March 3, 1976.

The charges, within the jurisdiction of the District Court, were transferred to the Criminal Court of Baltimore when Statchuk elected trial by jury.

When the State brought the charges to trial on January 24, 1977, a previously filed motion to dismiss for want of a speedy trial was granted by the trial judge. The State has appealed. Md. Cts. & Jud. Proc. Code Ann. § 12-302 (c) (1974).

*Barker v. Wingo*, 407 U. S. 514, 530, 92 S. Ct. 2182, 2192, 33 L.Ed.2d 101, 116-17 (1972), makes manifest that the question whether one has been denied a constitutional right to a speedy trial must be approached by the courts on an *ad hoc* basis by the application of a balancing test in which the conduct of both the prosecution and the defendant are weighed. The Supreme Court, leaving open whether there may be other factors that might go into the balancing test, identified four factors that courts should assess in determining whether a particular defendant has been deprived of his right to a speedy trial, namely: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

The Court of Appeals and this Court consistently have utilized those factors as bench marks in determinations of the question. *Jones v. State*, 279 Md. 1, 367 A. 2d 1 (1976);

*Epps v. State,* 276 Md. 96, 345 A. 2d 62 (1975); *State v. Wilson,* 35 Md. App. 111, 371 A. 2d 140 (1977); *Sylvester v. State,* 16 Md. App. 638, 644, 299 A. 2d 129, 132 (1973).

### Length of Delay

In *Barker v. Wingo, supra,* it was said at 407 U. S. 530, 92 S. Ct. 2192, 33 L.Ed.2d 117: "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."

In the subject case the delay was from March 3, 1976 to January 24, 1977, a period of 10 months and 21 days.[1] Although borderline, we conclude that this delay in a case of the subject nature is of constitutional dimension and requires us to consider the other factors.

The following chart of events will serve to set the stage for our discussion of the other factors in the balancing process.

| | |
|---|---|
| March 3, 1976 | Arrested for subject offenses. |
| March 26, 1976 | Released on bail. |
| April 18, 1976 | Arrested on new charge of "impersonating attorney," jailed when unable to meet increased bail costs. |
| May 12, 1976 | State ready for trial in District Court for Baltimore City. Defendant appeared with counsel but elected trial by jury. |

---

1. The threshold question whether the length of delay is such as to require inquiry into the other factors is to be determined by consideration of the time from which a person becomes an "accused" to the date of trial. United States v. Marion, 404 U. S. 307, 320, 92 S. Ct. 455, 463, 30 L.Ed.2d 468, 479 (1971); Smith v. State, 276 Md. 521, 528 n. 4, 350 A. 2d 628, 633 n. 4 (1976); Dorsey v. State, 34 Md. App. 525, 532-33, 368 A. 2d 1036, 1041 (1977).

| | | |
|---|---|---|
| | May 13, 1976 | Case transferred to Criminal Court of Baltimore and set for trial on July 8, 1976. |
| about | May 18, 1976 | Released on bail. |
| about | May 19, 1976 | Arrested on "another charge of impersonating an attorney." Jailed. |
| | July 8, 1976 | Case called for trial but defendant appeared without counsel. |
| | July 8, 1976 | Defendant transferred to Clifton T. Perkins Hospital by *sua sponte* order of court. |
| | September 22, 1976 | Case postponed by defendant absent evaluation from Clifton T. Perkins Hospital. |
| | September 23, 1976 | Counsel for Statchuk filed insanity plea, speedy trial motion, motion to suppress identification, motion for discovery and inspection. |
| | October 14, 1976 | Clifton T. Perkins Hospital Report filed. |
| | November 10, 1976 | Case postponed, court not available. |
| | December 29, 1976 | Case postponed, end of jury term. |
| | January 5, 1977 | Motion to dismiss for want of speedy trial. |
| | January 24, 1977 | Case ready for trial but dismissed for want of speedy trial. |

### Reason for Delay

The Supreme Court in *Barker v. Wingo, supra,* made plain that different weights should be assigned for different reasons for delay. Because we think that the subject delay ranges from the justified through the unjustified, we shall divide the period from arrest to trial into segments for our discussion.

We observe at the outset that there is not the slightest indication in the record that the State had made a deliberate attempt to delay the trial in order to hamper the defense. *See Barker, supra,* at 531, [2192], [117].

### March 3, 1976 to July 8, 1976

### (Arrest to Initially Scheduled Trial Date)

The offenses took the form of a series of six similar but separate offenses, each of which posed a potential threat of public danger.

False alarms or reports of fire carry within themselves a potential for public harm. Emergency vehicles responding to them present traffic dangers of significance. Absences of fire equipment from their stations on fruitless missions carry a potential for harm by reason of the likelihood of less timely response to a real emergency.

False reports to the police cast added investigative burdens upon them such as necessarily lessen availability of officers to avert criminal offenses or to seize criminal offenders.

The multiple cases presented, in short, a degree of complexity and importance distinguishing them from routine, "run-of-the-mill" offenses.

The trial judge assessed this period of time against the State. We think it was error to do so.

Judge Moylan for this Court pointed out in *State v. Lawless,* 13 Md. App. 220, 283 A. 2d 160 (1971), that blame should not be assigned to the State for the reasonable and

necessary delay inherent in a particular prosecution, saying at 230 [169]:

> "Recognizing that the right to a 'speedy trial' is not the right to an immediate trial, but that time must be allowed for reasonable preparation on the part of the prosecution and for the orderly process of the case from indictment to retention (or appointment) of counsel to arraignment to trial, we reckon as 'delay' only the passage of time beyond that which is the obvious requirement of orderly procedure." (Footnotes omitted.)

The validity of that idea was affirmed in *Epps v. State*, 276 Md. 96, 345 A. 2d 62 (1975), where the late Judge O'Donnell, speaking for the Court of Appeals, said at 110 [72]:

> "The appellant, of course, upon being charged 'was not entitled to demand an immediate trial,' *Jones v. State, supra*, [241 Md.] at 610, 217 A. 2d at 374; sufficient time must be allowed for the reasonable preparation of the case on the part of the prosecution and for the orderly processes of the case 'because of the many procedural safeguards provided an accused.' *United States v. Ewell, supra; State v. Lawless, supra.* For 'speedy trial' purposes the delay involved is reckoned only in connection with 'the passage of time beyond that which is obviously within the requirements of orderly procedure.' *State v. Lawless, supra*, [13 Md. App.] at 230, 283 A. 2d at 169."

We conclude that the period now under discussion was within a time frame in which multiple offenses of the subject nature reasonably could or should be brought to trial, *i.e.*, the delay was "within the requirements of orderly procedure." We think that no blame attaches to the State for this portion of delay.

*July 8, 1976 to September 23, 1976*

(Initially Scheduled Trial Date to Insanity Plea)

We have heretofore noted that when the series of cases came on for trial in the District Court of Maryland for

Baltimore City, Statchuk appeared with counsel and elected a jury trial. Such procedure was, of course, quite within the rights of the accused and is mentioned merely because, when Statchuk appeared in the Criminal Court of Baltimore on July 8, 1976 to stand trial, he did so without counsel. Only then was the trial judge informed by the accused that he had chosen to discharge his personal attorney and desired to represent himself.

Thus it was that the judge assigned to the scheduled July 8, 1976 trial postponed it and passed an order stating, *inter alia,* that "the Defendant's behavior in Criminal Court Part XI on July 8, 1976 presents the question of his competency to stand trial on these charges and other charges now pending."

The order went on to require delivery of the accused "to the custody of the Superintendent of Clifton T. Perkins State Hospital to determine his competency to stand trial and whether he is responsible for the criminality of his actions and whether he is a danger to himself or society."

The order also recited that "the said Defendant has been evaluated by the Medical Officer of the Supreme Bench, the report thereof indicating that the said Defendant is dangerous and may not be responsible for his conduct." The record shows that the accused indeed had been evaluated by a Medical Officer of the Supreme Bench in connection with an earlier incident involving an entirely unrelated offense. Contrary to the recitation in the order, however, the report of that Medical Officer showed that the accused then was competent to stand trial.

The record does not reflect that a hearing concerning competency was held on July 8, 1976. There is no record support for the bald allegation of the order that "the Defendant's behavior in Criminal Court Part XI on July 8, 1976 presents the question of his competency to stand trial."

Maryland Code (1957, 1972 Repl. Vol.) Article 59, § 23 authorizes passage of an order requesting an examination by the Department of Mental Hygiene whenever it shall appear to the court that an accused is incompetent to stand trial. The section makes plain, however, that the court should pass such an order only "for good cause shown and after

affording the defendant an opportunity to be heard on his own behalf or through counsel."

In the absence of a record showing that such an opportunity was accorded to the accused on July 8, 1976, we shall assign against the State the lion's share of blame for the entire period from that date until September 23, 1976, when an insanity plea was filed by counsel for the accused — a period of 2 months and 15 days.

This is not to say that Statchuk does not carry a share of blame for that delay. He contributed to it on two counts. First, he appeared for trial without counsel, delaying until that date the giving of notice to the court that he had discharged his attorney. Second, he only then advised the court of his desire to represent himself. These actions imposed a dual constitutional obligation upon the trial judge.

On the one hand, Statchuk was entitled to be represented by counsel as a matter of absolute constitutional right. Sixth Amendment to the United States Constitution. This right "invokes, of itself, the protection of a trial court, in which the accused — whose life or liberty is at stake — is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused." *Johnson v. Zerbst,* 304 U. S. 458, 465, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461, 1467 (1938).

On the other hand, Statchuk also had a constitutional right to represent himself. *Faretta v. California,* 422 U. S. 806, 95 S. Ct. 2525, 45 L.Ed.2d 562 (1975). *Faretta* requires trial courts to assure that one who chooses self-representation "be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " 422 U. S. at 835, 95 S. Ct. at 2541, 45 L.Ed.2d at 582.

Otherwise stated, the trial judge found himself suddenly confronted with constitutional obligations in which the competence of the accused was of critical significance. While

not in accord with statutory standards as discussed above, the course he followed was intended to assist in determining appellant's competence respecting either waiver of counsel or self-representation. This circumstance, in our view, lessens the weight of the blame that otherwise might attach to this period.

In any case, State fault terminated on September 23, 1976, because the filing of an insanity plea on behalf of the accused on that date justified passage of an order for examination of the mental condition of an accused under Article 59, § 25. The clear intent of the latter section is that a defendant, raising the defense of insanity, is under a legal obligation to submit to an examination. *Bremer v. State,* 18 Md. App. 291, 316-17, 307 A. 2d 503, 519-20 (1973), *cert. denied,* 415 U. S. 930, 94 S. Ct. 1440, 39 L.Ed.2d 488 (1974); *Riggleman v. State,* 33 Md. App. 344, 354, 364 A. 2d 1159, 1165 (1976).

*September 23, 1976 to October 14, 1976*

(From Insanity Plea to Filing of Perkins Report)

The medical report of Perkins Hospital upon the mental condition of the accused was filed in the proceedings on October 14, 1976. This filing occurred well within the time designated by Article 59, § 26. No State induced delay is reflected in it. It is wholly neutral and reasonable and without significance in the constitutional analysis.

*October 14, 1976 to November 10, 1976*

(Perkins Report Filing to Assigned Trial Date)

This delay was in no sense inordinate. It is within a wholly reasonable time frame. We assign no blame to the State for that delay. *Epps, supra.*

*November 10, 1976 to January 24, 1977*

(Postponed Trial Date to Actual Trial Date)

The cases were postponed on November 10, 1976, because "no court was available." They were postponed again on December 29, 1976, because "there was no jury available."

This delay seems to us to be of the nature discussed by Chief Judge Murphy in *Smith v. State,* 276 Md. 521, 350 A. 2d 628 (1976) explicating *Barker v. Wingo, supra,* where he said at 528-29 [633]:

> "In *Barker,* Mr. Justice Powell, for the Supreme Court, expressed the view that 'different weights should be assigned to different reasons [for delay].' 407 U. S. at 531, 92 S. Ct. at 2192. Initially, he observed that '[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government.' *Id.* He then indicated that prolongation of trial due to the negligence of state officials, understaffing of state offices or overcrowded courts, while not to be considered neutral, is to be 'weighted less heavily' toward a finding of a violation of the Sixth Amendment right."

We assign fault for this delay to the State but measure its weight less heavily in the delicate balance required for determination whether violation of a Sixth Amendment right has been shown. This delay was of 2 months, 14 days duration.

### Defendant's Assertion of His Right

The defendant filed his motion for a speedy trial on September 23, 1976, 6 months and 20 days after his arrest. In *Barker, supra,* the Supreme Court, while rejecting the demand rule within the concept of waiver, emphasized "that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." 407 U. S. at 532, 92 S. Ct. at 2193, 33 L.Ed.2d at 118.

### Prejudice to the Accused

In discussing the factor of prejudice the Supreme Court in *Barker, supra,* identified three interests of defendants which the speedy trial right was designed to protect, namely: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize

anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.*

(i)

The accused was admitted to bail on March 26, 1976, twenty-three days after his arrest upon the subject charges. His subsequent confinement on April 18, 1976, resulted from his arrest upon another unrelated charge. Readmitted to bail on May 18, 1976, he was reconfined on May 19, 1976, as the result of arrest upon a third unrelated charge.

Otherwise stated, Statchuk's confinement as the result of the subject cases was limited to the twenty-three day period immediately following his arrest (March 3-March 26). His subsequent confinement was the product of unrelated other offenses. No oppressive pretrial incarceration as to the subject offenses has been shown.

(ii)

The only anxiety and concern of the accused reflected in his testimony upon the speedy trial issue relates to an allegation of inadequate medical treatment while in confinement. We have pointed out, *supra*, that his confinement in jail after March 26, 1976, was not occasioned by the subject charges but by his arrest upon other offenses. Whatever may be appellant's ability to show prejudice attaching to the State's failure to try those other offenses, it is plain from this record that this suggested prejudice was not a product of the prosecution now under discussion.

(iii)

There is no evidence whatever that the defense of the accused was in any way impaired by the delay in bringing these cases to trial. Appellant in the course of his testimony declared that the delay caused the loss of one Anthony Blackwell as a witness in his behalf. The record affirmatively shows an acknowledgment that "Mr. Blackwell is related to the charges charging the defendant of representing himself as an attorney."

There has been, in sum, no prejudice to the accused occasioned by delay of the trial of the subject offenses.

## The Balancing

The totality of State induced delay in the subject prosecution was 4 months, 29 days. Such a delay is marginally substantial at best. The course followed by the accused contributed somewhat to one-half of that delay. The other half of the delay, while not entitled to a neutral designation, is of the kind to be "weighted less heavily" in the balance. *Smith v. State, supra,* at 529 [633].

Even if we were to assume that the period of State induced delay amounted to "substantial delay" which created a presumption of prejudice and shifted the burden of going forward with the evidence to the State, the appellee is not helped. *State v. Jones,* 18 Md. App. 11, 29, 305 A. 2d 177, 187 (1973). We have heretofore explained that the record affirmatively demonstrates that the accused suffered no significant prejudice.

The accused was tardy in his assertion of his right to a speedy trial. In *Barker, supra,* the Supreme Court said: " . . . The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." 407 U. S. at 531-32, 92 S. Ct. at 2192-93, 33 L.Ed.2d at 117-18.

Under our constitutionally mandated examination of the record as a whole, with consideration given to all factors of the balancing process, we are persuaded that the accused was not denied his constitutional right to a speedy trial. Dismissal of the statements of charges was erroneous.

*Orders dismissing statements of charges reversed.*
*Costs to be paid by appellee.*