CHARLES OLIN SCHMITT *v.* STATE OF MARYLAND

[No. 1578, September Term, 1979.]

*Decided July 15, 1980.*

The cause was argued before LISS and COUCH, JJ., and J. WILLIAM HINKEL, Associate Judge of the District Court of Maryland for District 8, specially assigned.

*Geraldine K. Sweeney, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Ray E. Stokes, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Joseph A. Dugan, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

Liss, J., delivered the opinion of the court.

Appellant, Charles Olin Schmitt, was charged in the Circuit Court for Prince George's County by a seven count indictment with housebreaking, larceny, receiving stolen goods and burglary. The cases were submitted to a jury on November 28, 1979, and the jury returned guilty verdicts on the burglary and grand larceny charges. Sentences were imposed, and it is from those judgments that this appeal was filed.

The questions raised by the appellant are as follows:

1. Did the trial court err in denying appellant's motions to dismiss the indictment for lack of a speedy trial?

2. Did the trial court err in denying appellant's motions to suppress illegally seized evidence?

1.

This case presents another in the seemingly unending series of complaints by defendants in criminal prosecutions that they have been denied their Sixth Amendment right to a speedy trial. Previous decisions of the Supreme Court of the United States, the Court of Appeals of Maryland and our Court have established the guidelines by which we must measure the delay in bringing a defendant to trial. These guidelines necessarily determine whether the defendant is entitled to a dismissal of the indictment against him because of the State's failure to comply with the requirements of the Sixth Amendment.

When the period of delay between a defendant's arrest and trial is of constitutional dimension, the court is required to consider a four-factor balancing test to determine whether the defendant has been deprived of his right to a speedy trial. *See Barker v. Wingo,* 407 U.S. 514, 92 S. Ct. 2182 (1972); *Wilson v. State,* 281 Md. 640, 382 A.2d 1053 (1978), *aff'g, State v. Wilson,* 35 Md. App. 111, 371 A.2d 140 (1977); *Epps v. State,* 276 Md. 96, 345 A.2d 62 (1975); *State v. Hiken,* 43 Md. App. 259, 405 A.2d 284 (1979).

Because the balancing test necessarily compels courts to approach speedy trial cases on an "ad hoc" basis, the four factors mentioned in *Barker v. Wingo* and its progeny must

be applied individually to the facts in each of the cases considered. These factors are: (1) the length of the delay; (2) the reasons for the delay; (3) the assertion of the speedy trial right; and (4) prejudice to the defendant.

(1) Length of delay

The speedy trial clock began to run in this case on the date the appellant was arrested, which was March 20, 1979. The trial of his case was commenced and concluded on November 28, 1979. Thus, the total period involved was eight months and eight days. Unless the court finds this total delay to be of "constitutional dimension" the interaction of the four-pronged balancing test is not triggered. However, in *Barker v. Wingo, supra,* it is pointed out that whether a delay is of "constitutional dimension" is determined not solely by the length of the period of delay. The Supreme Court there said:

> [B]ecause of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious complex conspiracy charge. [407 U.S. at 530-31.]

The charges in this case were the common garden variety of burglary and larceny of an apartment. The case was originally set for trial on July 17, 1979 (four months after the arrest), and at no time after that date until the trial on November 28, 1979 did the State indicate to the several trial judges who were involved in the case that the State had any difficulty in preparing its case for trial. Certainly the complexity of the case was not offered as a reason for any of the delays which occurred.

By way of comparison, we note that in *McIntyre v. State,* 17 Md. App. 526, 302 A.2d 672 (1973), a robbery case, and *State v. Becker,* 24 Md. App. 549, 332 A.2d 272 (1975), an automobile larceny case, that a delay of six and one half months and nine and one half months, respectively, were held to be of "constitutional dimensions." Most recently, this

Court found a nine month and twenty-three day delay to be sufficiently long to invoke the balancing test even though the charges in the case involved complex issues of conspiracy and insurance fraud. *State v. Hiken, supra,* at 272. We conclude, taking in consideration all the facts available to us in the record, that the delay in this case does, indeed, cross the threshold of "constitutional dimension."

In order to assess intelligently the balancing tests it becomes necessary for us to state the chronology of events relevant to the issue of speedy trial as follows:

| | | |
|---|---|---|
| March 20, 1979 | — | Appellant arrested |
| April 25, 1979 | — | Indictment filed containing counts 1 through 7. |
| May 23, 1979 | — | Notice setting case for jury trial on July 17. |
| July 17, 1979 | — | State motion for continuance granted on grounds of unavailable prosecuting witness. |
| July 20, 1979 | — | Notice setting case for jury trial on September 6, 1979. |
| September 6, 1979 | — | Co-defendant McCoy failed to appear. Case continued because it could not be reached and no other judge available. |
| September 10, 1979 | — | Notice setting case for jury trial on October 15, 1979. |
| October 15, 1979 | — | Case could not be reached and was continued. State's Attorney involved in another case and no other judge available. Trial reset for November 21. |
| October 15, 1979 | — | Appellant moved for a speedy trial and moved to dismiss for want of a speedy trial. |
| October 26, 1979 | — | Appellant's motion to dismiss for want of a speedy trial denied. |

| | |
|---|---|
| November 21, 1979 — | State motion for a continuance because of unavailable witness granted. Trial date reset for November 28. |
| November 21, 1979 — | Appellant's motion to dismiss for want of a speedy trial denied. |
| November 28, 1979 — | Appellant's motion to sever counts 1 through 3 from counts 4 through 7 denied. Motion to dismiss for lack of speedy trial denied. |

(2) Reasons for delay and (3) Assertion of right to speedy trial.

In making its analysis, this Court is required to ascertain whether a delay has been caused by the State or the defense and what blame, if any, is associated with the reason for the delay. *Barker v. Wingo, supra,* at 531. Different weight must be assigned to different reasons for delay. Therefore, a deliberate attempt to delay a trial in order to hamper a defendant's defense must be weighed heavily against the State. On the other hand, more neutral reasons such as negligence or overcrowded courts must be weighed against the State but less heavily.

(March 20, 1979 to July 17, 1979)

This period is, we conclude, attributable to the orderly processing of appellant's case and thus not chargeable to the State. *See Nocera v. State,* 36 Md. App. 317, 374 A.2d 608 (1977); *State v. Lawless,* 13 Md. App. 220, 283 A.2d 160 (1971).

(July 17, 1979 to September 6, 1979)

The State urges that the delay in the period between July 17, 1979 to September 6, 1979 should not be charged against the State because the delay was caused by the absence of the complaining witness who required back surgery. Apparently, no effort was made to reach a stipulation with defense counsel as to a proffer of what her testimony would have been had she been called as a witness. As we see it, it

should have been a simple matter to have reached such a stipulation and to have proceeded with the trial on the date scheduled without the necessity for a postponement. Under these circumstances, we conclude this delay is chargeable against the State.

(September 6, 1979 to October 15, 1979)

This interval is chargeable against the State. The reason for the postponement on September 6 was that the State's Attorney handling appellant's case was trying another case and no other judge was available to hear the instant matter. The period, then, must be weighed against the State, but may not be weighed as heavily as a delay caused intentionally by the State. *State v. Statchuk,* 38 Md. App. 175, 380 A.2d 225 (1977).

(October 15, 1979 to November 21, 1979)

The period between October 15, 1979 to November 21, 1979 is also chargeable to the State because the same State's Attorney was involved in another case and no other judge was available to hear appellant's case.

(November 21, 1979 to November 28, 1979)

This period must be weighed heavily against the State for the reasons we shall recite. A review of the record discloses that the appellant was unusually diligent in his assertion of his right to a speedy trial. The record reflects that appellant asserted that right on October 15, 1979, November 21, 1979 and on November 28, 1979. Arguments were heard before three different judges on each of appellant's motions to dismiss the indictment against him for failure to provide a speedy trial. The motions were denied in each instance. In addition, appellant sought pre-trial release and reduction of bond on at least two occasions before an additional judge and relief was denied in each of those instances, also.

We examine at this point the failure of the State to proceed to trial on November 21, 1979. At that point in the proceedings, the State had already postponed the case on two occasions because the particular State's Attorney was engaged in the trial of another case and no court was available. Prior to the case being set for trial on November

21, the State routinely issued summonses on October 25, 1979, to, among others, a Prince George's County police sergeant whose testimony was vital to the case. The court records disclose the sergeant was served on October 26. On October 29, the sergeant sent a memo to the State's Attorney, received on October 31, which read as follows:

> This is to inform your office that on the court date scheduled 11/21/79, I have scheduled vacation in Florida from 11/14/79 through 11/26/79. I am making notification at this time so changes can be made with the least amount of inconvenience to all persons involved.

The State's Attorney replied to the memo from the sergeant on November 2, 1979:

> This is to inform you that this case has been specially set for November 21, 1979, and must be tried on that date or else it will be dismissed by the Court. The Court has provided a special judge and courtroom just for this case, and I have been specially assigned by my office to prosecute it.
>
> You are an essential witness and, therefore, cannot be excused. I am making the notification at this time so changes can be made with the least inconvenience to all persons involved.

Thereafter, on November 5, the sergeant called the State's Attorney, and in the course of the discussion, the officer was advised that the delay in the case was becoming substantial and that the State was under a great deal of compulsion to try the case. The officer stated that he would come back from Florida so that he could attend and testify in the case. There was no further contact between the State's Attorney and the officer or any of his superior officers to further assure his attendance at trial. At 8:27 a.m. on November 21, the date of trial, the sergeant called the State's Attorney's office and left a message with the State's victim/witness coordinator, Miss Hess, that he was sick and would not attend the trial.

Miss Hess told the sergeant to hold on and went to notify the Assistant State's Attorney. By the time the State's Attorney picked up the phone, the sergeant had hung up. Miss Hess, who had no information concerning the sergeant's vacation plans, opined to the State's Attorney that the call seemed to be a long distance call. The State's Attorney then called the station commander at the Oxon Hill station where the sergeant was assigned and requested his assistance in securing the attendance of the sergeant at the trial. The station commander called the sergeant's home and received no answer. Another officer was sent to the sergeant's home. He learned that the sergeant was not at home even though he had reported he was ill and was unable to attend the trial. At this period in the proceedings, the State again requested a postponement (to November 28) over the objection of the appellant who again asserted his right to a speedy trial and to a dismissal of the indictment.

When the case had been postponed from October 15 to November 21, another trial judge in the circuit, after reviewing the history of the case, denied appellant's motion for dismissal because of a lack of speedy trial but stated as follows:

> This case is set for November 21, 1979. If it is not tried on that date, on an oral motion to dismiss, except for extraordinary causes, I will re-evaluate my denial of your motion. So that as far as I am concerned, if this case doesn't go to trial on the 21st, and the State doesn't have an extraordinary reason why it doesn't, then at that time I will reconsider this one.

The clear implication of that statement was that if the case was not tried when scheduled on November 21, unless there was some extraordinary reason advanced by the State, the trial court would grant the appellant's motion. That this was the clear understanding of all the parties is evidenced by the State's Attorney's statement to the sergeant that the case must be tried on November 21 or it would be dismissed. In spite of this, at the request for postponement on

November 21, yet another judge denied the defendant's motion to dismiss the indictment and granted a further postponement on what was clearly less than extraordinary grounds.[1] The sole reason given by the judge for granting the postponement was that the defendant was not being unduly prejudiced.

(4) Prejudice to the appellant

This brings us then to the question of whether the appellant sustained any prejudice in the delay of bringing the case to trial. When the length of delay between indictment and trial is of constitutional dimension, the presence of prejudice is presumed. The three types of prejudice considered under speedy trial analysis are: (1) oppressive pretrial incarceration; (2) anxiety and concern; and (3) prejudice to an accused's defense. *State v. Wilson, supra,* at 127.

In our analysis of the record, we find some evidence of prejudice as to each of these facets of the case. At the time of his arrest, the appellant was on parole and was employed. Immediately after his arrest, his parole was revoked. He was denied pre-trial release and reduction of bond, and while it is true that a detainer was later issued by another jurisdiction, the appellant's incarceration for more than eight months awaiting trial prevented any effort to resolve his detainer problem prior to trial for this offense. In addition, one of the trial judges in the course of denying appellant's motion for dismissal concluded that the appellant had suffered oppression and anxiety as a result of the long period of incarceration. Finally, there is at least a suggestion that the appellant suffered an impairment of his defense because of his inability to secure the testimony of his co-defendant as a result of the disappearance of that co-defendant prior to September 6, 1979. Counsel for the State and defense differed over whether the co-defendant would exonerate or implicate the appellant. The investigating officer conceded that on the night of the arrest

---

1. We find no significance in the fact that the postponement was only for one additional week.

the co-defendant may have said a few times that the appellant was not involved. It was the State's burden to establish that there was an absence of serious prejudice, and we find that it did not meet that burden.

Applying the balancing test mandated by *Barker .v. Wingo, supra,* in assessing the four relevant factors, we reach the conclusion that the appellant was denied his right to a speedy trial. We are persuaded not only by the successive postponements granted the State because no court was available but also because of the specific instances the State's Attorney was engaged in trying another case. In each instance, the State had more than five weeks to arrange its schedule to be certain that the case would be tried on the date set. The State knew that the accused was insisting on a prompt trial. Even more culpable was the State's failure to guarantee the appearance of its indispensable witness, the police officer, after it was put on notice that there might be a problem with his being available on the date of trial. The conduct of the officer was inexcusable. It is obvious to us that he had made up his mind not to let the trial of this defendant interfere with his vacation. His message apparently delivered from out of town on the morning of trial that he was ill and could not attend was at least unprofessional. The State had been told that the case must be tried on November 21, and once the State knew there might be a problem in securing the attendance of the police officer, it was obligated to do more than discuss the matter over the telephone with the officer. It is significant that in a period of more than two weeks after that phone conversation no further contact with the police officer was attempted by the State's Attorney. We believe that at a minimum, communication with the officer's superiors would have obviated the necessity for a further postponement. In this case, the police officer was the State's witness, and it was the State's responsibility to make every reasonable effort to guarantee his attendance at trial. In view of the circumstances the issuance of a subpoena was not enough. Certainly, we cannot condone a situation in which a police officer appears if it suits his convenience.

Under all the circumstances of this case, we conclude the accused was deprived of his right to a speedy trial and that

the trial judge should have granted his motion to dismiss the indictment.

In view of this conclusion, appellant's second argument that the trial judge erred in denying appellant's motion to suppress illegally seized evidence is moot.

*Judgments reversed, costs to be paid by Prince George's County.*