550 A.2d 972

**John CARTER aka James Smith**

v.

**STATE of Maryland.**

**No. 395, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Dec. 9, 1988.

Mark Colvin, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Gwynn X. Kinsey, Jr., Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Sandra A. O'Connor, State's Atty. for Baltimore County, Towson, on the brief), for appellee.

Submitted before GARRITY, ALPERT, and ROBERT M. BELL, JJ.

ALPERT, Judge.

On April 19, 1988, John Carter was found guilty on one count of credit card misuse after a trial in the Circuit Court for Baltimore County that proceeded on an agreed statement of facts. He was sentenced to five years imprisonment, with all but eighteen months suspended, and placed on probation for two years to begin subsequent to his release from incarceration. This appeal was noted on April 25, 1988.

*Speedy Trial*

■ The sole issue presented on appeal is whether appellant's constitutional right to a speedy trial was violated.[1] We set forth a chronology of relevant dates:

August 25, 1987: Appellant arrested for credit card misuse; warrant for violation of probation served on Appellant at time of arrest.

August 30, 1987: Defense counsel entered appearance; Motion for Speedy Trial filed.

September 2, 1987: Probation revocation before Judge Sfekas; probation revoked, Appellant sentenced to eighteen months in Division of Correction.

September 4, 1987: Appellant transferred from Baltimore County Detention Center to Division of Correction.

September 17, 1987: First trial date in District Court; Appellant "was in the DOC, no writ was issued. He was not transported for trial ..."

October 22, 1987: Eighteen month sentence imposed on September 2, 1987, for violation of probation by Judge Sfekas modified to eighteen months' work release at the Baltimore County Detention Center; Appellant not trans-

---

1. The constitutional right to a speedy trial arises from the Sixth Amendment of the United States Constitution and, in Maryland, from article 21 of the Maryland Declaration of Rights.

ferred from Division of Correction, however, because of six month sentence to Baltimore City Jail previously imposed by Judge Prevas in Circuit Court for Baltimore City.

November 2, 1987: Sentence in Baltimore City case modified by Judge Prevas so that Appellant could begin work release.

December 30, 1987: Second trial date in District Court; Appellant in Baltimore City Jail; no writ issued, Appellant not transported to court; bond increased to $40,000 for failure to appear.

January 22, 1988: Appellant "moved from the Baltimore County Detention Center and placed in the Work Release Program."

February 23, 1988: Third trial date in District Court; Appellant's motion to dismiss for lack of speedy trial denied; trial postponed at State's request over Appellant's objection.

March 8, 1988: Bail review; Appellant released on personal recognizance in this case.

March 15, 1988: Jury trial prayed.

March 28, 1988: Appellant arraigned in Circuit Court; motion to dismiss filed.

April 19, 1988: Hearing on motion to dismiss; agreed statement of facts read, and sentence imposed.[2]

■ In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court set forth four factors to be examined and balanced in determining whether a particular defendant's constitutional right to a speedy trial has been violated. These factors are (1) length of delay, (2) reason for the delay, (3) defendant's assertion of his right, and (4) prejudice to the defendant. *Id.* at 530, 92 S.Ct. at 2191; *Brady v. State,* 291 Md. 261, 264–65, 434 A.2d 574 (1981); *Fuget v. State,* 70 Md.App. 643, 649, 522

---

2. This chronology of dates is in large part taken from appellant's brief, corroborated by our review of the record, and agreed to by the State.

A.2d 1371 (1987); *Ferrell v. State,* 67 Md.App. 459, 463, 508 A.2d 490 (1986).

## A. *Length of Delay*

Before such an "ad hoc" analysis can be made, the length of delay, recognized as "a triggering mechanism," must be examined to determine whether it arises to a constitutional dimension so as to be considered "presumptively prejudicial." *Barker, supra,* 407 U.S. at 530–31, 92 S.Ct. at 2191–92; *State v. Gee,* 298 Md. 565, 578–79, 471 A.2d 712 (1984). The Supreme Court added that "the length of delay that will provoke such an inquiry is necessarily dependent upon the particular circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker, supra,* 407 U.S. at 530–31, 92 S.Ct. at 2191–92.

We hold that under the circumstances of this case a seven-month, twenty-five day delay between appellant's arrest and the hearing on April 19, 1988 is presumptively prejudicial. The case *sub judice,* involving credit card misuse, was conceptually and factually uncomplicated. No formal trial was conducted because an agreed statement of facts, which took only a few minutes to read, was introduced. Under these circumstances, such a delay triggers the *Barker v. Wingo* balancing test.[3]

---

**3.** A plethora of Maryland cases have examined when such a balancing test is triggered. Although we recognize that no bright line can or should be developed, it appears from our examination that a less than six month delay is almost never of "constitutional dimension," *see Gee, supra* (less than six months not of constitutional dimension); *State v. Hunter,* 16 Md.App. 306, 295 A.2d 779 (1972) (5–½ month delay is not prejudicial); *Thompson v. State,* 15 Md.App. 335, 290 A.2d 565 (1972), while a delay of over one year usually triggers the *Barker v. Wingo* balancing test. *See Epps v. State,* 276 Md. 96, 345 A.2d 62 (1975) (one year, 14 days triggers balancing test); *Brady, supra* (14 month delay gives rise to a speedy trial claim of *prima facie* merit); *Dorsey v. State,* 34 Md.App. 525, 368 A.2d 1036 (1977) (11 months delay was prejudicial); *Pyle v. State,* 34 Md.App. 60, 366 A.2d 90 (1976) (11 month delay was prejudicial).

## B. *Reason for Delay*

In recognition of the fact that some delay between arrest and trial is necessary for preparation, *see Ferrell, supra,* 67 Md.App. at 463, 508 A.2d 490; *Epps v. State,* 276 Md. 96, 111–12, 345 A.2d 62 (1975), the time interval between August 25, 1987 (date of arrest) and September 17, 1987 (the first scheduled trial date) will be assigned a neutral status. The key period of time involved in our analysis is September 17, 1987 through March 15, 1988. During that time, the first two trial dates were postponed because of the State's failure to cause a writ to be issued to the Department of Correction so that the defendant could be produced at trial. Postponement of the third trial date was requested by the State over the appellant's objection. The reason behind this request does not appear in the record before us. The State would have us assign a more neutral status to such a delay, arguing that such delays can be "attributable to the ordinary operation of the court administrative system." We disagree.

In *Brady v. State, supra,* the Court of Appeals cited "prosecutorial indifference" as the reason for a similar delay and "the factor most determinative of the [speedy trial] issue" in that case. *Id.,* 291 Md. at 269, 434 A.2d 574. Brady was charged with breaking and entering, released on bail, and was then notified that the charges had been dropped. Unbeknownst to him, a grand jury subsequently indicted him on the same charges. He was incarcerated in the Baltimore City Jail for six months on unrelated charges and, upon release, was transferred to Anne Arundel County Detention Center to await trial on the breaking and entering charges. He was subsequently tried and convicted nearly 14 months after his original arrest. On appeal, the Court of Appeals reversed, stating, "As we see it, the State, in the performance of its public trust, has a duty to coordinate the efforts of its various criminal divisions in attempting to locate a defendant." *Id.* at 267, 434 A.2d 574.

■ In *Strickler v. State,* 55 Md.App. 688, 466 A.2d 51 (1983), this court held that a 23 month delay in bringing Strickler to trial on escape charges while he was incarcerated on unrelated charges was inexcusable, especially where the defendant made three requests for disposition of the escape charges. The court provided:

> If as in *Brady,* the State is held accountable for its failure to ascertain that a person sought for trial is already detained within the correctional system, then, patently, it is accountable when it knows that the individual sought is within that system.

> Strickler, as *State v. Hicks,* 285 Md. 310, 403 A.2d 356 (1979), makes clear, was under "no duty to bring himself to trial." That is the responsibility that is shouldered by the State and, in the words of *Hicks,* that duty on the part of the State "is not excused merely because the prisoner is incarcerated in another jurisdiction." 285 Md. at 320, 403 A.2d at 361.

> Strickler's case falls within the perimeters staked out by *Brady* and *Gee.* The appellant was an accused, and he was in custody. It was, under the holding of *Hicks, supra,* the State's duty to bring him to trial promptly, and its failure to perform what it was obliged to do is tantamount to the lack of prosecutorial diligence condemned in *Brady v. State, supra.*

*Id.* at 693–94, 466 A.2d 51. John Carter's first two trial dates were postponed due to the State's inexcusable failure to bring him to trial. The third trial date was postponed upon a request by the State for reasons unknown. In the meantime, nearly six months had passed. The State's inaction transcends the bounds of mere negligence, which is "a more neutral reason" for justification of the length of delay, and rises to the level of "prosecutorial indifference" condemned in *Brady* and *Strickler.*

## C. *Assertion of Right*

The defendant asserted his right to a speedy trial in a motion for a speedy trial filed a few days after his arrest.

Although he did not immediately complain after the first two postponements of his trial, he did object when his trial date was postponed a third time. His request for a jury trial, necessitating a transfer of the case to circuit court and the further delay subsequently caused is a delaying factor that we cannot ignore. We have no problem assigning the delay from March 15 (date on which defendant made the request) to April 19 (date of hearing) to the appellant. Appellant did not seek a jury trial until the last minute possible, the date upon which the trial in the District Court had been rescheduled after the State's prior request for a continuance had been granted. According to the prosecutor, the State was ready to proceed in District Court on that date. The fact that appellant waived his right to a jury trial after he caused the case to be transferred to Circuit Court casts some doubt upon the sincerity of appellant's demand for a speedy trial in the Circuit Court.[4] He assigns no mitigating reasons for this delaying action taken *after* the time within which his right to a speedy trial was supposedly violated.[5]

## D. *Prejudice*

In *Barker v. Wingo, supra,* the Supreme Court articulated three interests that the right to a speedy trial is designed to protect:

(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of

---

**4.** *Cf., United States v. Kozerski,* 518 F.Supp. 1082, 1094 (D.N.H.1981) (because of defendant's vacillations over whether to represent himself or proceed with counsel, there was no basis to his allegations of prosecutorial delay); *People v. Puyear,* 48 Ill.App.3d 183, 6 Ill.Dec. 291, 293, 362 N.E.2d 1113, 1115 (1977) (waiver of a jury trial after the case has been set for such a trial and especially late in the statutory 120 day period constitutes delay on part of defendant).

**5.** Our analysis of the effect of appellant's waiver of jury trial might have been different had such a waiver been the result of a plea agreement between appellant and the State.

a defendant adequately to prepare his case skews the fairness of the entire system.

*Id.,* 407 U.S. at 532, 92 S.Ct. at 2193.

Appellant argues that his continual detention when he became eligible for the work release program and the jeopardization of his family life were prejudicial to him. Our examination of the record indicates that the defendant was eligible to be transferred to the work release program on January 22, 1988, but because of the detainer against him in this case, such a transfer could not be effected until the lower court released him on his own recognizance at the bail review hearing on March 8. *Cf. Schmitt v. State,* 46 Md.App. 389, 397, 416 A.2d 296 (1980) (continued incarceration prevented defendant from resolving problem with a detainer issued by another jurisdiction). In fact, the defendant's failure to appear on December 30, 1987, the second trial date, led to an increase in the amount of bail. This adversely affected his chances of being released from jail pending trial until the situation was subsequently remedied at the March 8 hearing. Of course, the anxiety and concern which the appellant claims could also be attributed to the jail sentences imposed by Judges Sfekas and Prevas.

### Balancing

■ In balancing the above factors, we hold that the appellant's right to a speedy trial has not been infringed. The length of time between arrest and trial could fairly be said to be on the low end of the "constitutional dimension" scale. While we find it relevant that much of the delay was occasioned by the prosecutorial indifference exhibited by the State, we cannot and shall not ignore the fact that the appellant further delayed his trial in March 1988, apparently for tactical reasons to which we are not privy. *See* part C, *supra.* On balance we are not prepared to say that the six month trial delay attributable to the State violated appellant's right to a speedy trial.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.

ROBERT M. BELL, Judge, dissenting.

The majority holds that appellant was not denied his right to speedy trial. From that holding, I respectfully dissent.

Addressing the assertion of the right factor of the *Barker v. Wingo* [1] test, the majority acknowledges that appellant asserted his right to a speedy trial in a timely fashion, indeed, within a few days of his arrest. Without, however, crediting him for the timely assertion, the majority proceeds to find fault, if not explicitly, then implicitly, with his having failed to "immediately complain after the first two postponements of his trial, [although] he did object when his trial date was postponed the third time." The unkindest cut of all, however, is the majority's holding that appellant's prayer for a jury trial was a delaying factor "that we cannot ignore", and its assumption that "the appellant did not really desire trial by jury" since he proceeded non-jury in the circuit court.

The majority approach to the prejudice factor is similar. Although it recognizes the interests protected by the speedy trial right, *see Barker v. Wingo*, 407 U.S. at 532, 92 S.Ct. at 2192, it refuses to recognize that appellant suffered prejudice as a result of the State's prosecutorial neglect. *See* discussion *infra*. The majority reasons that this is appropriate because the pendency of two other cases, and their resolution, gave rise to the same elements of prejudice as did the instant case.

As one might expect, these analyses played a dispositive role in the balance of the factors. In the majority's view, appellant's prayer for jury trial was the critical factor for its conclusion that his right to speedy trial had not been infringed. It held:

The length of time between arrest and trial could fairly be said to be on the low end of the "constitutional

---

1. 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

dimension" scale. While we find it relevant that much of the delay was occasioned by the prosecutorial indifference exhibited by the State, we cannot and shall not ignore the fact that the appellant further delayed this trial in March, 1988, apparently for tactical reasons to which we are not privy.... On balance we are not prepared to say that the six month trial delay attributable to the State violated appellant's right to a speedy trial.

This holding makes obvious that the delay attributed to appellant's jury prayer was not only weighed against appellant, but it was weighed heavily against him. What is less obvious, but nevertheless implicit in the holding, is that appellant was not prejudiced by the delay attributable to the State's indifference.

I am in full accord with the majority's conclusion that six months of the delay was due to "prosecutorial indifference". I also wish to emphasize that, prior to the postponement of appellant's third trial date, appellant's motion to dismiss for lack of speedy trial was heard and denied. Appellant's argument on the motion raised the issue of the propriety of the first two postponments; hence, even though he was not present to object at the time that they were granted, appellant did not acquiesce in, or accept, the postponements as justified. The case was postponed a third time, this time over appellant's explicit objection. It was only after appellant's motion to dismiss for lack of speedy trial had been denied by the District Court that, on the next trial date, appellant sought the jury trial to which he was constitutionally entitled. The record of the proceedings contains no indication that, when he requested it, appellant did not wish to have a jury trial. That he ultimately did not choose to proceed via that route is not and, indeed, cannot be dispositive since such a conclusion is supported only by sheer speculation.

I believe the majority is in error on several bases. First, it fails to credit to appellant the heavy evidentiary weight to which the assertion of the right to speedy trial is entitled. Second, it penalizes appellant's assertion of his constitution-

al right to a jury trial. Third, the majority seems to suggest that, even though he was not present at the first two postponements through no fault of his own, appellant had an obligation to object prior to the hearing on his motion to dismiss. Finally, the majority erroneously concludes that appellant was not prejudiced by the delay attributable to the State.

"[T]he assertion or failure to assert [the right to speedy trial is] a significant factor in the overall [speedy trial] analysis." *Wilson v. State*, 281 Md. 640, 656, 382 A.2d 1053, cert. denied, 439 U.S. 839, 99 S.Ct. 126, 58 L.Ed.2d 136 (1978), citing *Barker*, 407 U.S. at 528–29, 92 S.Ct. at 2191. When an accused asserts the right, particularly, as here, early in the proceedings, it is "entitled to strong evidentiary weight in determining whether [he was] being deprived of the right [to speedy trial]". *Epps v. State*, 276 Md. 96, 118, 345 A.2d 62 (1975), quoting *Barker*, 407 U.S. at 532, 92 S.Ct. at 2192. In this case, appellant not only asserted the right, but he reasserted it at the first available opportunity, *i.e.*, at the third trial date, when he was brought to court for the first time and moved to dismiss the charges for want of a speedy trial. Under these circumstances, it is difficult to understand why appellant was not entitled to be given the benefit of the strong evidentiary weight to which his assertion of the right was entitled.

A criminal defendant, charged with certain offenses, has a constitutional right, at his election, to a jury trial. When, therefore, in an appropriate case, he prays a jury trial, even though his trial is thereby delayed, he does no more than legitimately exercise his constitutional right. I reject the notion espoused by the majority that the resultant delay is chargeable against the defendant for purposes of a speedy trial analysis; the majority has provided no authority, not to mention Maryland authority, that supports that holding.[2]

---

**2.** The cases cited by the majority in support of its position are not applicable. In *United States v. Kozerski*, 518 F.Supp. 1082 (D.N.H. 1981), the accused's course of conduct supports the finding that the

Indeed, I believe Maryland law to be to the contrary. *See*, for example, *Goins v. State*, 293 Md. 97, 107 n. 7, 442 A.2d 550 (1982), in which the Court of Appeals made clear that, in the context of a motion to dismiss pursuant to Maryland Rule 4–271(a), the successor to former Maryland Rule 746, the delay occasioned by a defendant's request for a medical examination in support of his insanity plea was not attributable to the defendant.

In addition to the foregoing, there is another reason I believe that the delay cannot be charged against appellant. Recently, in *Legal Aid v. Bishop's Garth*, 75 Md.App. 214, 540 A.2d 1175 (1988), we made clear that a sanction, authorized by the Maryland Rules, aimed at dilatory conduct on the part of a party, *see* Maryland Rule 1–341, does not apply to such conduct when it is based on justifiable grounds and involves the assertion of a fundamental right. *Id.*, at 221, 540 A.2d 1175. In that case, the trial judge assessed counsel fees and costs against the Legal Aid Bureau after the jury trial it prayed resulted in a verdict, reached after only brief deliberations, in favor of Bishop's Garth. Rationalizing his decision, the trial judge concluded that, notwithstanding that it was for the purpose of obtaining "additional discovery" and of obtaining a decision on factual issues, the jury trial prayer was made in order to delay the trial and to intimidate Bishops Garth into dismissing its suit. We reversed, pointing out that "to the extent, if any, that the trial judge relied upon the jury trial request as indicating an improper delay, his finding was clearly erroneous." 75 Md.App. at 222, 540 A.2d 1175.

---

accused was intent upon delaying his trial. At issue in *People v. Puyear*, 48 Ill.App.3d 183, 6 Ill.Dec. 291, 362 N.E.2d 1113 (1977) was the accused's waiver, late in the statutorily mandated speedy trial period, of the jury trial he had previously prayed. A case not cited by the majority, *University Heights v. Dachman*, 20 Ohio App.3d 26, 484 N.E.2d 199 (1984), actually holds that an accused's jury trial prayer tolled the speedy trial time; however, that holding was in the context of a prayer that was not a matter of right. The opinion suggests, in other words, that the accused in that case had no absolute right to a jury trial of the charges against him.

In my view, the point we made was that permitting the imposition of sanctions on a party in a civil case who legitimately prays a jury trial places an improper and unacceptable burden on that party's exercise of a fundamental right and, indeed, has a chilling effect. This point has at least equal applicability in the criminal context. Charging the delay occasioned by a defendant's jury trial demand against that defendant for purposes of speedy trial analysis has the same effect as the imposition of sanctions in Bishop's Garth would have had on Legal Aid's exercise of a fundamental right; it places an undue and unreasonable burden upon the exercise of the jury trial right. The period should be considered neutral, neither charged against appellant nor affecting the weight to be given appellant's assertion of the right.

That there were other bases for the prejudice which appellant alleges he suffered does not mean that he was not prejudiced as a result of the delay in the present case. The detainer attributable to this case prevented appellant's release on work release and that, in turn, is, at least in part, attributable to the State's indifference. Similarly, the fact that appellant's bail was increased because of his failure to appear, a failure which was not his fault, by the way, is also directly attributable to the State's prosecutorial indifference. Finally, an accused may suffer anxiety and concern as a result of more than one case. Thus, that there was anxiety and concern attributable to the sentences he received in other cases does not prove that he did not, at the same time, experience some anxiety and concern directly attributable to the case *sub judice.*

With these observations firmly in mind, it is patent that the balance of the factors mandates a result completely opposite that reached by the majority. Approximately six months of the delay was the result of prosecutorial indifference, which is more heavily assessed against the State, and

in favor of the accused, than would be mere negligence.[3] As indicated, appellant asserted his right early in the proceedings and reasserted them at the next available opportunity, when he was brought to court. Thus, he is entitled to receive the benefit of the strong evidentiary weight to which the assertion of the right is entitled. The delay occasioned by appellant's jury trial prayer is neutral. On balance, appellant did suffer some actual prejudice. Appellant was incarcerated throughout this period, both as a result of this case and as a result of other charges, and he was prevented from being placed on work release, by virtue of the State's delay in bringing him to trial on these charges. He also experienced some anxiety and concern.

Since none of the delay is attributable to appellant, the delay attributable to the State weighs in appellant's favor, appellant early on asserted his right to a speedy trial, and appellant suffered some actual prejudice, I would hold that appellant was denied his right to a speedy trial.[4]

---

**3.** Of course, the length of the delay is also weighed against the State for purposes of the balance test. *Lewis v. State,* 71 Md.App. 402, 417–18, 526 A.2d 66 (1987).

**4.** Even if the majority is correct that the delay occasioned by appellant's jury trial demand was chargeable to appellant, I would reach the same result. Since the weight to be accorded that period of delay would, at best, be slight and the delay itself was short, placing it into the equation would have no appreciable effect on the balance.